

FILED

2015 Feb-16  PM 06:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **XAVIER MACK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **V.** ) | **Case Number: 13-cv-2263-HGD** |
| ) | |
| **COLORWORKS PAINTING** ) | |
| **COMPANY, LLC, and ERIC** ) | |
| **BIRCHFIELD,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANT ERIC BIRCHFIELD'S
## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.   STATEMENT OF THE CASE.................................... 1

II.  UNDISPUTED RELEVANT MATERIAL FACTS..................... 2

III. DISCUSSION OF RELEVANT LEGAL AUTHORITIES.............. 9

    A.   Summary Judgment Standard................................ 9

    B.   Eric Birchfield Is Not Personally Liable To Xavier Mack For
        Any Claim Arising In Contract Against Colorworks Painting
        Company, LLC....................................... 11

    C.   Mack Cannot Establish A Prima Facie Case of Race
        Discrimination...................................... 14

    D.   Mack Cannot Establish That The Reasons Articulated
        For His Termination Are A Pretext For Race Discrimination..... 20

IV.  CONCLUSION........................................... 26

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **XAVIER MACK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case Number: 13-cv-2263-HGD** |
| | ) | |
| **COLORWORKS PAINTING** | ) | |
| **COMPANY, LLC, and ERIC** | ) | |
| **BIRCHFIELD,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT ERIC BIRCHFIELD'S
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**NOW COMES** Defendant Eric Birchfield and moves this Honorable Court to grant summary judgment in his favor.  As grounds therefore, Defendant shows as follows:

## I.    STATEMENT OF THE CASE

Plaintiff Xavier Mack (hereinafter "Mack") alleges that Defendant Eric Birchfield, (hereinafter "Birchfield") discriminated against him in termination, layoff, and other adverse terms and conditions of employment on the basis of his race in violation of 42 U.S.C. § 1981.  (Deposition of Xavier Mack, Ex. 1, ¶ 7).  More specifically, Mack alleges Birchfield terminated his employment on December 3, 2013, and retained a white male who had only been employed for approximately three

1

(3) weeks. (Deposition of Xavier Mack, Ex. 1, ¶ 2, 9). Mack is an African-American. (Deposition of Xavier Mack, Ex. 1, ¶ 3).

However, Mack cannot produce sufficient evidence to support a finding that (1) he was ever in a contractual/employment relationship with Eric Birchfield, (2) he has ever been denied a contract/employment by Eric Birchfield on the basis of his race, or (3) Eric Birchfield terminated any contractual relationship/employment with Mack on the basis of his race. Therefore, Eric Birchfield is entitled to a judgment as a matter of law and his motion for summary judgment is due to be GRANTED.

## II.    UNDISPUTED RELEVANT MATERIAL FACTS

1.    Xavier Mack was introduced to Eric Burchfield by a mutual friend in 2006 or 2007. (Deposition of Xavier Mack, p. 9-10).

2.    After Mack and Burchfield met, Mack and Burchfield would get together from time to time to fish or smoke marijuana. (Deposition of Xavier Mack, p. 11; Depositition of Eric Burchfield, p. 20).

3.    Burchfield also purchased Marijuana from Mack once or twice a month from 2007 to 2011. (Deposition of Xavier Mack, p. 11; Depositition of Eric Burchfield, p. 21).

4.    Eric Burchfield has owned Colorworks Painting Company, LLC, for seven-and-a-half years. Colorworks does residential and commercial painting.

(Deposition of Eric Burchfield, p. 11).

5.     Mack worked for Colorworks on a part-time basis as a painter from 2006/2007 until 2011.  (Deposition of Xavier Mack, p. 10, 21).

6.     Colorworks would hire part-time painters from time to time to meet the workload.  (Deposition of Xavier Mack, p. 20, 27).

7.     Colorworks employed five painters in 2007 when Mack started working part-time: Chris Riley (white), Chris Hawkins (white), Felix Hill (black), Christoff Bradley (white), and Jonathan McElwane, a/k/a "Peewee" (white).  (Deposition of Xavier Mack, p. 16-17; Deposition of Eric Burchfield, p. 15).

8.     During the time Mack worked part-time, he was predominately supervised by Christoff Bradley.  (Deposition of Xavier Mack, p. 17).

9.     Colorworks employees begin work each day at 6:00 or 6:30. (Deposition of Xavier Mack, p. 18).

10.     Mack was hired to work full-time for Colorworks on March 11, 2011. (Deposition of Xavier Mack, p. 12, 65; Deposition of Xavier Mack, Ex. 4; Deposition of Eric Burchfield, p. 40).

11.     Chris Riley, Chris Hawkins, Felix Hill, Christoff Bradley, and Jonathan McElwane were still employed with Colorworks as painters when Mack began working full-time.  (Deposition of Xavier Mack, p. 18-19).

3

12.     After Mack was hired to work as a full-time painter, he was predominately supervised by Felix Hill or Christopher Hawkins. (Deposition of Xavier Mack, p. 21).

13.     Mack never had any discussions with Hill or Hawkins about any problems with his job or performance while working with Colorworks. (Deposition of Xavier Mack, p. 22-23, 52-53).

14.     Mack had keys to the Colorworks office, the shop where all of the tools and supplies were stored, and keys to the vans.  Mack, Hill, and Christoff were the only Colorworks employees who had keys. (Deposition of Xavier Mack, p. 45-46).

15.     Mack was also issued a Colorworks credit card.  Mack and Christoff were the only two Colorworks employees who had a Colorworks credit card. (Deposition of Xavier Mack, p. 46-47).

16.     In 2011, Mack was issued a 1099 from Colorworks.     (Deposition of Xavier Mack, p. 49-50; Deposition of Xavier Mack, Ex. 2).

17.     In 2013, Mack was issued a W-2 from Colorworks.     (Deposition of Xavier Mack, p. 49-50; Deposition of Xavier Mack, Ex. 3).

18.     From 2011 forward, all of Mack's pay came from Colorworks. (Deposition of Xavier Mack, p. 50).

19.     Early October 2013, Burchfield pulled up on a job and caught Mack

4

standing in the driveway talking on his telephone while the rest of the crew was painting.  (Deposititon of Eric Burchfield, p. 55).

20.    The next day, Burchfield pulled up to the same job site and found Mack sitting in the work van while the rest of the crew was painting.  (Deposititon of Eric Burchfield, p. 56).

21.    Burchfield had previously reprimanded Mack for leaving a job site early after Birchfield instructed the crew Mack was working on not to leave until the job was finished.  (Deposition of Xavier Mack, p. 34-35).

22.    There was also at least one occasion when Burchfield came to a job site and found Mack sitting in the van eating a sandwich while the rest of the crew was working.  (Deposition of Xavier Mack, p. 37).

23.    Mack understood that Colorworks had a rule requiring everyone to take breaks and lunch at the same time.  (Deposition of Xavier Mack, p. 37).

24.    There was also occasions when Burchfield would come to a job site and find Mack taking a break while the rest of the crew was working.  (Deposition of Xavier Mack, p. 37-39).

25.    Mack was late returning from lunch on Thanksgiving Eve, 2013.  (Deposition of Xavier Mack, p. 28-29, 41).

26.    Thanksgiving Eve, 2013, Burchfield pulled Mack to the side to talk to

5

him about returning to work late from lunch.    (Deposition of Xavier Mack, p. 28-29, 41).

27.    After Burchfield spoke privately with Mack about returning to work late from lunch, Burchfield called the whole crew up to discuss the matter.  (Deposition of Xavier Mack, p. 34; Deposition of Eric Burchfield, p. 46-51).

28.    After Burchfield met with the Colorworks employees, he left the job site. He returned a few minutes later and caught Mack mocking him and making fun of him in front of two other Colorworks employees.  (Deposition of Eric Burchfield, p. 52-54).

29.    Mack was terminated by Colorworks on Thanksgiving Eve, 2013; the Sunday after Thanksgiving, 2013; the Monday after Thanksgiving, 2013; or December 3, 2013.  (Deposition of Xavier Mack, p. 23-25, 65; Deposition of Xavier Mack, Ex. 1 ¶ 2; Deposition of Xavier Mack, Ex. 4).

30.    On the Sunday after Thanksgiving, 2013, Burchfield sent Mack a text telling Mack he did not have any work for him.  (Deposition of Xavier Mack, p. 24-25; Deposition of Eric Burchfield, p. 65-66).

31.    Monday after Thanksgiving, 2013, Mack sent Burchfield a text asking Burchfield why the other guys were working if work was slow.  Burchfield's response was something like "that's just the way it is."  Mack then said "[f]or a guy that's been

with you for three years, work slow, but for a guy that's only been with you for two to three months, he's working, I don't understand.  Burchfield then asked Mack "[d]o you understand joking and laughing at the boss with other employees is detrimental to your job?" (Deposition of Xavier Mack, p. 26-27; Deposition of Eric Burchfield, p. 69-70).

32.     Mack was referring to Bobby Elliott (white) when he referenced the employee who had only been working for Colorworks for two or three months. (Deposition of Xavier Mack, p. 26-27).

33.     Bobby Elliott was later terminated for missing too much work. (Deposition of Eric Burchfield, p. 14).

34.     The Monday after Thanksgiving, 2013, Burchfield sent Mack a text telling Mack he needed to turn in his Colorworks keys, radio, and credit card. (Deposition of Xavier Mack, p. 42-43; Deposition of Eric Burchfield, p. 70).

35.     The Wednesday after Thanksgiving, 3013, Burchfield sent Mack a text saying that he would take the necessary authoritative measures to retrieve the Colorworks items if Mack did not return them.  Mack did not respond.  (Deposition of Xavier Mack, p. 43; Deposition of Eric Burchfield, p. 72).

36.     The following Friday, Sheriff Hale went to Mack's residence and told Mack it would be in his best interest to return the items to Colorworks.  (Deposition

7

of Xavier Mack, p. 43).

37.    Mack returned the keys, radio, and credit card to Colorworks later that same day.  (Deposition of Xavier Mack, p. 43-44; Deposititon of Eric Burchfield, p. 73).

38.    Mack has not had any conversations with Burchfield since he returned the items to Colorworks.  (Deposition of Xavier Mack, p. 44; Deposititon of Eric Burchfield, p. 73).

39.    After Mack was terminated, he filed a claim for unemployment against Colorworks because Colorworks was his employer.  (Deposition of Xavier Mack, p. 47-48).

40.    In its response to Mack's application for unemployment, Colorworks indicated that Mack's employment was terminated for disrespect, tardiness, unwilling to work, and repeated insubordination. (Deposititon of Eric Burchfield, p. 77; Deposititon of Eric Burchfield, Ex. 6).

41.    Mack has never heard Eric Burchfield, any of his supervisors, or any of his coworkers at Colorworks use a racial slur. (Deposition of Xavier Mack, p. 50).

42.    During the time Mack worked for Colorworks, Jonathan McElwane was terminated for not showing up to work on time.  Chris Riley was terminated for insubordination.  McElwane and Riley are both white.  (Deposition of Xavier Mack,

8

p. 57).

43.    John Patrick was a part-time employee who was let go do to lack of work.  (Deposititon of Eric Burchfield, p. 14-15).

44.    Christoff Bradley left Colorworks in November 2014 after graduating from college and getting an IT job with Mercedes.  (Deposititon of Eric Burchfield, p. 13-14).

45.    As of December 2014, Colorworks had two employees: Felix Hill (black) and Chris Hawkins (white).  (Deposititon of Eric Burchfield, p. 11-13).

## III.    DISCUSSION OF RELEVANT LEGAL AUTHORITIES

### A.    Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  See Celotex Corp. V. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 LK.ED. 265 (1986)(quoting Fed.R.Civ.P. 56(c)).  There is a genuine issue of material fact only if the non-moving party has produced evidence that a reasonable fact-finder could return a verdict in its favor.  Waddell v. Valley Force Dental Assocs., Inc., 276 F.3d 1275. 1279 (11th Cir. 2001).  The evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith radio Corp., 475 U.S.

574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986).  The non-moving party must make a sufficient showing on each essential element of the case for which she has the burden of proof. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552.

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. at 586, 106 S.Ct. 1348.  According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.

The non-moving party must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257, 106 S.Ct. 2505.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 f.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted.  Anderson, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed. 2d 202.

Even when the evidence is viewed in the light most favorable to Mack, it is inconceivable that a reasonable fact-finder could return a verdict in his favor.  Simply

stated, Mack knew the rules.  Mack broke the rules.  Mack's employment was terminated.  Similarly situated white employees knew the rules.  Similarly situated white employees broke the rules.   Similarly situated white employees were terminated.  Therefore, for each of the reasons set out herein-below, Colorworks is entitled to a judgment as a matter of law as to Mack's claims of discrimination and Colorworks's motion for summary judgment is due to be GRANTED.

### B. Eric Birchfield Is Not Personally Liable To Xavier Mack For Any Claim Arising In Contract Against Colorworks Painting Company, LLC.

It is undisputed that the case *sub judice* arises out of Xavier Mack's employment with Colorworks Painting Company, LLC.    The sole claim that Xavier Mack has filed against Eric Birchfield in this action is that Eric Birchfield, in his individual capacity, allegedly terminated Mack's employment on December 3, 2013, in violation of 42 U.S.C. § 1981.  However, it is undisputed that at all times pertinent to this action, Xavier Mack was employed by Colorworks Painting Company, LLC, not Eric Birchfield.  It is axiomatic that, if Xavier Mack was never employed by Eric Birchfield, in his individual capacity, Eric Birchfield could not possibly, in his individual capacity, terminate Mack's employment on the basis of his race in violation of 42 U.S.C. § 1981.  Therefore, Eric Birchfield is entitled to a judgment as a matter of law as to Xavier Mack(s) claim(s).

11

Alabama Code 1975, § 10A-5A-3.01, provides:  "A member of a limited liability company is not liable, solely be reason of being a member, for a debt, obligation, or liability of the limited liability company or a series thereof, whether arising in contract, tort, or otherwise or for the acts or omissions of any other member, agent, or employee of the limited liability company or a series thereof."

According to the language of the above-quoted statute, as a general rule, a member of a limited-liability company cannot be held liable for the debts of the limited-liability company under any legal or equitable theory.  "An agent acting with actual or apparent authority who enters a contract on behalf of a principal binds the principal but not himself." Lee v. YES of Russellville, Inc., 784 So.2d 1022, 1027 (Ala. 2000).  See, e.g., Empire Office Machs., Inc. v. Aspen Trails Assocs., LLC, 374 Mont. 421, 322 P.3d 424 (2014) (when existence of principal limited-liability company was disclosed to machine lessor through parties' four years of dealings in which lessor received payments from limited-liability company, member was not individually liable on lease although his signature line on documents did not specify his agency status).  See Anderson v. Timberlake, 114 Ala. 377, 22 So. 431 (1897) (mere fact that defendant had directed that accounts be charged to himself held not to be decisive on issue whether defendant intended to be sole debtor when purpose of direction may have been only to separate and distinguish accounts the defendant

12

was creating as agent in individual dealings he was having).

The law presumes that an agent of a disclosed principal does not incur personal responsibility absent affirmative evidence indicating otherwise. See generally McGinney v. Jackson, 575 So.2d 1070 (Ala. 1991) (law presumes that agent who has disclosed principal does not assume personal obligation; presumption applies when evidence shows that agent did not personally guarantee performance of principal).

Eric Birchfield is the sole member of Colorworks Painting Company, LLC. However, Eric Birchfield and Colorworks Painting Company, LLC, are not the same entity. See § 10A-5A-1.04(a)("A limited liability company is a separate legal entity.") Therefore, Xavier Mack's action against Eric Birchfield arising out of his termination by Colorworks Painting Company, LLC, is improper.

Individual capacity suits under Title VII are similarly inappropriate. The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act. See Clanton v. Orleans Parish School Bd., 649 F.2d 1084, 1099 & n. 19 (5th Cir.1981); see also 42 U.S.C. Sec. 2000e(b) (1988) (definition of "employer"); 42 U.S.C. Sec. 2000e-2 (1988) (violation for "employer" to discriminate); 42 U.S.C. Sec. 2000e-5(g) (1988) (relief for violation of Sec. 2000e-2).  The proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the

13

employer or by naming the employer directly.  See Busby v. City of Orlando, 931

F.2d 764 (11th Cir. 1991)

Therefore, Eric Birchfield is entitled to a judgment as a matter of law and his

motion for summary judgment is due to be GRANTED.

### C.   Mack Cannot Establish A Prima Facie Case of Race Discrimination.

In essence, Mack alleges that Birchfield/Colorworks laid him off/terminated

his employment while retaining a white employee – Bobby Elliott – who had only

been employed three (3) weeks, as stated in his Amended Complaint, or two to three

months, as stated in his deposition.  (Deposition of Xavier Mack, Ex. 1 ¶ 2, 9;

Deposition of Xavier Mack, p. 26-27).  However, Birchfield/Colorworks contend that

Mack was laid off and ultimately terminated for being disrespectful, tardiness,

unwilling to work, and repeated insubordination.  (Deposition of Eric Burchfield, p.

77; Deposition of Eric Burchfield, Ex. 6).  Furthermore, it is undisputed that Bobby

Elliott, a white painter, was terminated for missing too much work,  (Deposititition of

Eric Burchfield, p. 14); Jonathan McElwane, a white painter, was terminated for not

showing up to work on time; and Chris Riley, a white painter, was terminated for

insubordination.  Mack simply cannot make a prima facie case of discrimination

because he cannot produce sufficient evidence to support a finding that he was

replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class.  See Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003).

The same analytical framework applies to claims under Title VII and 42 U.S.C. § 1981. Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Under Title VII, it is unlawful for an employer "to discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a). Under § 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a).  Winborn v. Supreme Beverage Co. Inc., 12-16324.

To establish a prima facie case of discrimination based on disparate treatment in termination, a plaintiff may show that "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003)  In the disciplinary context, the most important factors "are the nature of the offenses committed and the nature of the punishments imposed." Stone & Webster Constr., Inc. v. U.S. Dep't of Labor, 684 F.3d 1127, 1135 (11th Cir. 2012).

15

Alternatively, in lieu of evidence of a similarly-situated comparator, a plaintiff may make out a prima facie case of racial bias in the application of discipline for a violation of work rules by showing that he did not actually violate the work rule. Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989). However, when an employee argues that he did not actually violate the rule in question, "an employer may rebut this allegation by showing its good faith, honest belief that the employee violated [the] rule." Stone & Webster Constr., 684 F.3d at 1136. If an employer terminates an employee "because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race.'" Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452-53 (11th Cir. 1987).

It is undisputed that Mack is a member of a protected class. He is African-American. However, Mack was qualified for any position available with Eric Birchfield in his individual capacity because, ipso facto, Eric Birchfield was not looking to hire anyone to work for him in his individual capacity. It is axiomatic that if Birchfield never employed Mack, Birchfield could not take any adverse employment action against Mack. Even if Mack could somehow be construed to be an applicant or employee of Eric Birchfield's, in his individual capacity, there is no evidence to support a finding that Mack was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual

16

outside his protected class.  To the contrary, it is un disputed that:

1.   Colorworks had five employees in 2007 when Mack started working part-time: Chris Riley (white), Chris Hawkins (white), Felix Hill (black), Christoff Bradley (white), and Jonathan McElwane (white). (Deposition of Xavier Mack, p. 16-17; Deposition of Eric Burchfield, p. 15).

2.   Chris Riley, Chris Hawkins, Felix Hill, Christoff Bradley, and Jonathan McElwane were still employed with Colorworks when Mack began working full-time.  (Deposition of Xavier Mack, p. 18-19).

3.   Early October 2013, Burchfield pulled up on a job and caught Mack standing in the driveway talking on his telephone while the rest of the crew was painting.  (Deposititon of Eric Burchfield, p. 55).

4.   The next day, Burchfield pulled up to the same job site and found Mack sitting in the work van while the rest of the crew was painting. (Deposititon of Eric Burchfield, p. 56).

5.   Burchfield had previously reprimanded Mack for leaving a job site early after Birchfield instructed the crew Mack was working on not to leave until the job was finished.  (Deposition of Xavier Mack, p. 34-35).

6.   There was also at least one occasion when Burchfield came to a job site and found Mack sitting in the van eating a sandwich while the rest of the

17

crew was working.  (Deposition of Xavier Mack, p. 37).

7.    Mack understood that Colorworks had a rule requiring everyone to take breaks and lunch at the same time.  (Deposition of Xavier Mack, p. 37).

8.    There was also occasions when Burchfield would come to a job site and find Mack taking a break while the rest of the crew was working. (Deposition of Xavier Mack, p. 37-39).

9.    Thanksgiving Eve, 2013, Burchfield pulled Mack to the side to talk to him about returning to work late from lunch.    (Deposition of Xavier Mack, p. 28-29, 41).

10.   After Burchfield met with the Colorworks employees, he left the job site.  He returned a few minutes later and caught Mack mocking him and making fun of him in front of two other Colorworks employees. (Deposition of Eric Burchfield, p. 52-54).

11.   Mack was terminated by Colorworks after the incident on Thanksgiving Eve, 2013;  (Deposition of Xavier Mack, p. 23-25, 65; Deposition of Xavier Mack, Ex. 1 ¶ 2; Deposition of Xavier Mack, Ex. 4).

12.   Bobby Elliott, a white painter, was terminated for missing too much work.  (Deposition of Eric Burchfield, p. 14).

13.   The Monday after Thanksgiving, 2013, Burchfield sent Mack a text

telling Mack he needed to turn in his Colorworks keys, radio, and credit card.   (Deposition of Xavier Mack, p. 42-43; Depositition of Eric Burchfield, p. 70).

14.     The Wednesday after Thanksgiving, 3013, Burchfield sent Mack a text saying that he would take the necessary authoritative measures to retrieve the Colorworks items if Mack did not return them and Mack did not respond.   (Deposition of Xavier Mack, p. 43; Depositition of Eric Burchfield, p. 72).

15.     Jonathan McElwane, a white painter, was terminated for tardiness. (Deposition of Xavier Mack, p. 57).

16.     Chris Riley, a white painter, was terminated for insubordination. (Deposition of Xavier Mack, p. 57).

17.     John Patrick, a white painter, was let go do to lack of work. (Depositition of Eric Burchfield, p. 14-15).

18.     As of December 2014, Colorworks had two employees: Felix Hill and Chris Hawkins.  (Depositition of Eric Burchfield, p. 11-13).

Mack clearly cannot establish a prima facie case of racially discriminatory termination. Simply put, as stated, Mack cannot produce any evidence that he was employed by Eric Birchfield, in his personal capacity; that Eric Birchfield, in his

19

personal capacity, subjected Mack to disparate treatment; or that Birchfield replaced Mack by a person outside his protected class or treated Mack less favorably than a similarly-situated individual outside his protected class. Moreover, there is nothing in the record to suggest that Eric Birchfield did not hold a good faith belief that Mack had committed the misconduct for which he was terminated by Colorworks. Accordingly, because Mack cannot establish a prima facie case, the motion for summary judgment filed by Birchfield is due to be GRANTED.

> **D.    Mack Cannot Establish That The Reasons Articulated For His Termination Are A Pretext For Race Discrimination.**

Assuming, *arguendo*, Mack could establish a prima facie case of discrimination, summary judgment is still due to be granted in favor of Birchfield because Mack cannot establish that Birchfield/Colorworks's asserted reasons for his termination are pretextual.

When a plaintiff has established a prima facie case of discrimination, the burden of production then shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). If the defendant is able to do so, the burden shifts back to the plaintiff to show that this reason is really a pretext for unlawful discrimination. Id. at 1272-73. The ultimate burden of proving that the

employer intentionally discriminated against the employee remains at all times with the plaintiff. Id. at 1273. A plaintiff must prove pretext by a preponderance of the evidence. Meeks v. Computer Associates Intern., 15 F.3d 1013, 1019 (11th Cir. 1994).

The undisputed evidence, even when viewed in the light most favorable to the Plaintiff, is sufficient to support a finding that:

1. Early October 2013, Burchfield pulled up on a job and caught Mack standing in the driveway talking on his telephone while the rest of the crew was painting.  (Deposition of Eric Burchfield, p. 55).

2. The next day, Burchfield pulled up to the same job site and found Mack sitting in the work van while the rest of the crew was painting. (Deposition of Eric Burchfield, p. 56).

3. Burchfield had previously reprimanded Mack for leaving a job site early after Birchfield instructed the crew Mack was working on not to leave until the job was finished.  (Deposition of Xavier Mack, p. 34-35).

4. There was also at least one occasion when Burchfield came to a job site and found Mack sitting in the van eating a sandwich while the rest of the crew was working.  (Deposition of Xavier Mack, p. 37).

5. Mack understood that Colorworks had a rule requiring everyone to take

breaks and lunch at the same time.  (Deposition of Xavier Mack, p. 37).

6.   There was also occasions when Burchfield would come to a job site and find Mack taking a break while the rest of the crew was working. (Deposition of Xavier Mack, p. 37-39).

7.   Mack was late returning from lunch on Thanksgiving Eve, 2013. (Deposition of Xavier Mack, p. 28-29, 41).

8.   Thanksgiving Eve, 2013, Burchfield pulled Mack to the side to talk to him about returning to work late from lunch.  (Deposition of Xavier Mack, p. 28-29, 41).

9.   After Burchfield spoke privately with Mack about returning to work late from lunch, Burchfield called the whole crew up to discuss the matter. (Deposition of Xavier Mack, p. 34; Deposititon of Eric Burchfield, p. 46-51).

10.   After Burchfield met with the Colorworks employees, he left the job site.  He returned a few minutes later and caught Mack mocking him and making fun of him in front of two other Colorworks employees. (Deposititon of Eric Burchfield, p. 52-54).

11.   Mack was terminated by Colorworks after the incident on Thanksgiving Eve, 2013.  (Deposition of Xavier Mack, p. 23-25, 65; Deposition of

Xavier Mack, Ex. 1 ¶ 2; Deposition of Xavier Mack, Ex. 4).

12.   On the Sunday after Thanksgiving, 2013, Burchfield sent Mack a text telling Mack he did not have any work for him.  (Deposition of Xavier Mack, p. 24-25; Deposition of Eric Burchfield, p. 65-66).

13.   Monday after Thanksgiving, 2013, Mack sent Burchfield a text asking Burchfield why the other guys were working if work was slow. Burchfield's response was something like "that's just the way it is." Mack then said "[f]or a guy that's been with you for three years, work slow, but for a guy that's only been with you for two to three months, he's working, I don't understand.  Burchfield then asked Mack "[d]o you understand joking and laughing at the boss with other employees is detrimental to your job?"  (Deposition of Xavier Mack, p. 26-27; Deposition of Eric Burchfield, p. 69-70).

14.   The Monday after Thanksgiving, 2013, Burchfield sent Mack a text telling Mack he needed to turn in his Colorworks keys, radio, and credit card.  (Deposition of Xavier Mack, p. 42-43; Deposition of Eric Burchfield, p. 70).

15.   The Wednesday after Thanksgiving, 3013, Burchfield sent Mack a text saying that he would take the necessary authoritative measures to

retrieve the Colorworks items if Mack did not return them.  Mack did not respond.  (Deposition of Xavier Mack, p. 43; Deposition of Eric Burchfield, p. 72).

16.  After Mack was terminated, he filed a claim for unemployment against Colorworks because Colorworks was his employer.  (Deposition of Xavier Mack, p. 47-48).

17.  In its response to Mack's application for unemployment, Colorworks indicated that Mack's employment was terminated for disrespect, tardiness, unwilling to work, and repeated insubordination. (Deposition of Eric Burchfield, p. 77; Deposition of Eric Burchfield, Ex. 6).

When an employer offers an employee's violation of a work rule as the justification for termination, the employee can "prove pretext by showing either that she did not violate the work rule or that, if she did, other employees not within the protected class who engaged in similar acts were not similarly treated." Sparks v. Pilot Freight Carriers, Inc., 830 F.2d 1554, 1563 (11th Cir. 1987). A plaintiff must show pretext with "concrete evidence in the form of specific facts." Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009). Mere "conclusory allegations and assertions" will not suffice. Id. When considering whether an employee's termination based on alleged misconduct was merely a pretext, the proper inquiry is whether the employer

24

believed that the employee was guilty of misconduct and whether that belief was the reason for the employee's discharge. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

Mack understood that Colorworks had a rule requiring everyone to take breaks and lunch at the same time. (Deposition of Xavier Mack, p. 37). Mack continued to break the rule repeatedly after being previously warned. After Mack was confronted by his supervisor, Mack was caught mocking the supervisor in front of coworkers. Mack was subsequently asked to return property belonging to the Company and he failed or refused to respond. Birchfield/Colorworks had an honest good faith reasonable belief that Mack's had engaged in inappropriate conduct and said conduct was unacceptable to Birchfield/Colorworks. As a result, Mack was terminated. Similarly situated white employees who engaged in substantially similar conduct were also terminated.

There are no genuine issues of material fact. Mack cannot make out a prima facie case of discrimination. Mack does not have any evidence to support a finding that the reasons articulated for his termination are a pretext for discrimination. In fact, Mack can offer nothing more than"conclusory allegations" to challenge the evidence that his supervisors believed—at the time of his termination—that he had violated company rules. See Bryant, 575 F.3d at 1308. Accordingly, Birchfield is

entitled to a judgment as a matter of law and its motion for summary judgment is due to be GRANTED.

## IV.   CONCLUSION

**WHEREFORE**, for the foregoing reasons, Eric Birchfield respectfully requests this Honorable Court to grant its Motion for Summary Judgment and tax costs against the Plaintiff.

Respectfully submitted,

s/ Scott A. Gilliland
Scott A. Gilliland (ASB-6604-l67s)
Counsel for Colorworks

Law Office of Scott A. Gilliland
400 Vestavia Parkway Suite 100
Vestavia Hills, AL 35216
Phone: (205)978-8800
Fax: (205)978-8811

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2015, I electronically filed the foregoing with the Clerk of the Court  using the CM/ECF system, which will send notification of such filing to the following:

<u>Counsel for Plaintiff</u>
Gregory O. Wiggins, Esq.
Kevin W. Jent, Esq.


s/Scott A. Gilliland_____
Counsel for Colorworks