FILED



2015 Feb-16  PM 07:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **XAVIER MACK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **V.** ) | **Case Number: 13-cv-2263-HGD** |
| ) | |
| **COLORWORKS PAINTING** ) | |
| **COMPANY, LLC, and ERIC** ) | |
| **BIRCHFIELD,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANT COLORWORKS PAINTING COMPANY, LLC,
## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.     STATEMENT OF THE CASE....................................... 1

II.    UNDISPUTED RELEVANT MATERIAL FACTS..................... 2

III.   DISCUSSION OF RELEVANT LEGAL AUTHORITIES.............. 9

      A.    Summary Judgment Standard............................... 10

      B.    Mack Cannot Establish A Prima Facie Case of Race
           Discrimination........................................... 12

      C.    Mack Cannot Establish That The Reasons Articulated
           For His Termination Are A Pretext For Race Discrimination...... 18

IV.   CONCLUSION............................................... 23

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| XAVIER MACK, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| V. | ) | Case Number: 13-cv-2263-HGD |
| | ) | |
| COLORWORKS PAINTING | ) | |
| COMPANY, LLC, and ERIC | ) | |
| BIRCHFIELD, | ) | |
| | ) | |
| **Defendants.** | ) | |

**NOW COMES** Defendant Colorworks Painting Company, LLC, and moves this Honorable Court to grant summary judgment in its favor.  As grounds therefore, Defendant shows as follows:

## I.   STATEMENT OF THE CASE

Plaintiff Xavier Mack (hereinafter "Mack") alleges that Defendant Colorworks Painting Company, LLC, (hereinafter "Colorworks") discriminated against him in termination, layoff, and other adverse terms and conditions of employment on the basis of his race in violation of 42 U.S.C. § 1981.  (Deposition of Xavier Mack, Ex. 1, ¶ 7).  More specifically, Mack alleges Colorworks terminated his employment on December 3, 2013, and retained a white male who had only been employed for approximately three (3) weeks.  (Deposition of Xavier Mack, Ex. 1, ¶ 2, 9).  Mack is

1

an African-American. (Deposition of Xavier Mack, Ex. 1, ¶ 3).

However, Mack cannot produce sufficient evidence to support a finding that (1) Colorworks laid him off and/or terminated his employment on the basis of his race, or (2) the reasons offered by Colorworks for the actions taken against Mack are a pretext for discrimination.  Therefore, Colorworks is entitled to a judgment as a matter of law and its motion for summary judgment is due to be GRANTED.

## II.    UNDISPUTED RELEVANT MATERIAL FACTS

1.    Xavier Mack was introduced to Eric Burchfield by a mutual friend in 2006 or 2007.  (Deposition of Xavier Mack, p. 9-10).

2.    After Mack and Burchfield met, Mack and Burchfield would get together from time to time to fish or smoke marijuana.  (Deposition of Xavier Mack, p. 11; Deposititon of Eric Burchfield, p. 20).

3.    Burchfield also purchased Marijuana from Mack once or twice a month from 2007 to 2011.   (Deposition of Xavier Mack, p. 11; Deposititon of Eric Burchfield, p. 21).

4.    Eric Burchfield has owned Colorworks Painting Company, LLC, for seven-and-a-half years.   Colorworks does residential and commercial painting. (Deposititon of Eric Burchfield, p. 11).

5.    Mack worked for Colorworks on a part-time basis as a painter from

2006/2007 until 2011.  (Deposition of Xavier Mack, p. 10, 21).

6.     Colorworks would hire part-time painters from time to time to meet the workload.  (Deposition of Xavier Mack, p. 20, 27).

7.     Colorworks employed five painters in 2007 when Mack started working part-time: Chris Riley (white), Chris Hawkins (white), Felix Hill (black), Christoff Bradley (white), and Jonathan McElwane, a/k/a "Peewee" (white).  (Deposition of Xavier Mack, p. 16-17; Deposition of Eric Burchfield, p. 15).

8.     During the time Mack worked part-time, he was predominately supervised by Christoff Bradley.  (Deposition of Xavier Mack, p. 17).

9.     Colorworks employees begin work each day at 6:00 or 6:30. (Deposition of Xavier Mack, p. 18).

10.    Mack was hired to work full-time for Colorworks on March 11, 2011. (Deposition of Xavier Mack, p. 12, 65; Deposition of Xavier Mack, Ex. 4; Depositition of Eric Burchfield, p. 40).

11.    Chris Riley, Chris Hawkins, Felix Hill, Christoff Bradley, and Jonathan McElwane were still employed with Colorworks as painters when Mack began working full-time.  (Deposition of Xavier Mack, p. 18-19).

12.    After Mack was hired to work as a full-time painter, he was predominately supervised by Felix Hill or Christopher Hawkins.  (Deposition of

Xavier Mack, p. 21).

13.    Mack never had any discussions with Hill or Hawkins about any problems with his job or performance while working with Colorworks. (Deposition of Xavier Mack, p. 22-23, 52-53).

14.    Mack had keys to the Colorworks office, the shop where all of the tools and supplies were stored, and keys to the vans.  Mack, Hill, and Christoff were the only Colorworks employees who had keys. (Deposition of Xavier Mack, p. 45-46).

15.    Mack was also issued a Colorworks credit card.  Mack and Christoff were the only two Colorworks employees who had a Colorworks credit card. (Deposition of Xavier Mack, p. 46-47).

16.    In 2011, Mack was issued a 1099 from Colorworks.    (Deposition of Xavier Mack, p. 49-50; Deposition of Xavier Mack, Ex. 2).

17.    In 2013, Mack was issued a W-2 from Colorworks.     (Deposition of Xavier Mack, p. 49-50; Deposition of Xavier Mack, Ex. 3).

18.    From 2011 forward, all of Mack's pay came from Colorworks. (Deposition of Xavier Mack, p. 50).

19.    Early October 2013, Burchfield pulled up on a job and caught Mack standing in the driveway talking on his telephone while the rest of the crew was painting.  (Depositition of Eric Burchfield, p. 55).

4

20.     The next day, Burchfield pulled up to the same job site and found Mack sitting in the work van while the rest of the crew was painting.  (Depositition of Eric Burchfield, p. 56).

21.     Burchfield had previously reprimanded Mack for leaving a job site early after Birchfield instructed the crew Mack was working on not to leave until the job was finished.  (Deposition of Xavier Mack, p. 34-35).

22.     There was also at least one occasion when Burchfield came to a job site and found Mack sitting in the van eating a sandwich while the rest of the crew was working.  (Deposition of Xavier Mack, p. 37).

23.     Mack understood that Colorworks had a rule requiring everyone to take breaks and lunch at the same time.  (Deposition of Xavier Mack, p. 37).

24.     There was also occasions when Burchfield would come to a job site and find Mack taking a break while the rest of the crew was working.  (Deposition of Xavier Mack, p. 37-39).

25.     Mack was late returning from lunch on Thanksgiving Eve, 2013. (Deposition of Xavier Mack, p. 28-29, 41).

26.     Thanksgiving Eve, 2013, Burchfield pulled Mack to the side to talk to him about returning to work late from lunch.   (Deposition of Xavier Mack, p. 28-29, 41).

5

27.    After Burchfield spoke privately with Mack about returning to work late from lunch, Burchfield called the whole crew up to discuss the matter.  (Deposition of Xavier Mack, p. 34; Deposition of Eric Burchfield, p. 46-51).

28.    After Burchfield met with the Colorworks employees, he left the job site. He returned a few minutes later and caught Mack mocking him and making fun of him in front of two other Colorworks employees.  (Deposition of Eric Burchfield, p. 52-54).

29.    Mack was terminated by Colorworks on Thanksgiving Eve, 2013; the Sunday after Thanksgiving, 2013; the Monday after Thanksgiving, 2013; or December 3, 2013.  (Deposition of Xavier Mack, p. 23-25, 65; Deposition of Xavier Mack, Ex. 1 ¶ 2; Deposition of Xavier Mack, Ex. 4).

30.    On the Sunday after Thanksgiving, 2013, Burchfield sent Mack a text telling Mack he did not have any work for him.  (Deposition of Xavier Mack, p. 24-25; Deposition of Eric Burchfield, p. 65-66).

31.    Monday after Thanksgiving, 2013, Mack sent Burchfield a text asking Burchfield why the other guys were working if work was slow.  Burchfield's response was something like "that's just the way it is."  Mack then said "[f]or a guy that's been with you for three years, work slow, but for a guy that's only been with you for two to three months, he's working, I don't understand.  Burchfield then asked Mack "[d]o

6

you understand joking and laughing at the boss with other employees is detrimental to your job?" (Deposition of Xavier Mack, p. 26-27; Deposition of Eric Burchfield, p. 69-70).

32.    Mack was referring to Bobby Elliott (white) when he referenced the employee who had only been working for Colorworks for two or three months. (Deposition of Xavier Mack, p. 26-27).

33.    Bobby Elliott was later terminated for missing too much work. (Deposition of Eric Burchfield, p. 14).

34.    The Monday after Thanksgiving, 2013, Burchfield sent Mack a text telling Mack he needed to turn in his Colorworks keys, radio, and credit card. (Deposition of Xavier Mack, p. 42-43; Deposition of Eric Burchfield, p. 70).

35.    The Wednesday after Thanksgiving, 3013, Burchfield sent Mack a text saying that he would take the necessary authoritative measures to retrieve the Colorworks items if Mack did not return them.  Mack did not respond.  (Deposition of Xavier Mack, p. 43; Deposition of Eric Burchfield, p. 72).

36.    The following Friday, Sheriff Hale went to Mack's residence and told Mack it would be in his best interest to return the items to Colorworks.  (Deposition of Xavier Mack, p. 43).

37.    Mack returned the keys, radio, and credit card to Colorworks later that

same day.  (Deposition of Xavier Mack, p. 43-44; Deposititon of Eric Burchfield, p. 73).

38.     Mack has not had any conversations with Burchfield since he returned the items to Colorworks.  (Deposition of Xavier Mack, p. 44; Deposititon of Eric Burchfield, p. 73).

39.     After Mack was terminated, he filed a claim for unemployment against Colorworks because Colorworks was his employer.  (Deposition of Xavier Mack, p. 47-48).

40.     In its response to Mack's application for unemployment, Colorworks indicated that Mack's employment was terminated for disrespect, tardiness, unwilling to work, and repeated insubordination. (Deposititon of Eric Burchfield, p. 77; Deposititon of Eric Burchfield, Ex. 6).

41.     Mack has never heard Eric Burchfield, any of his supervisors, or any of his coworkers at Colorworks use a racial slur. (Deposition of Xavier Mack, p. 50).

42.     During the time Mack worked for Colorworks, Jonathan McElwane was terminated for not showing up to work on time.  Chris Riley was terminated for insubordination.  McElwane and Riley are both white.  (Deposition of Xavier Mack, p. 57).

43.     John Patrick was a part-time employee who was let go do to lack of

8

work.  (Deposition of Eric Burchfield, p. 14-15).

44.    Christoff Bradley left Colorworks in November 2014 after graduating from college and getting an IT job with Mercedes.  (Deposition of Eric Burchfield, p. 13-14).

45.    As of December 2014, Colorworks had two employees: Felix Hill (black) and Chris Hawkins (white).  (Deposition of Eric Burchfield, p. 11-13).

## III.    DISCUSSION OF RELEVANT LEGAL AUTHORITIES

The evidence, even when viewed in the light most favorable to the Plaintiff, Xavier Mack, is sufficient support a finding that (1) Xavier Mack was reprimanded for leaving a job site early after Burchfield instructed the crew Mack was working on not to leave until the job was finished; (2) Xavier Mack was reprimanded for not taking lunch/breaks with the rest of the crew, contrary to the Colorworks work rules; (3) Colorworks terminated Bobby Elliott, a white painter, for missing work; (4) Colorworks terminated Jonathan McElwane, a white painter, for not showing up to work on time; (5) Colorworks terminated Chris Riley, a white painter, for insubordination; (6) Colorworks and a reasonable, good faith honest belief that Xavier Mack mocked Eric Burchfield after being reprimanded for taking too long for lunch; (7) Colorworks had legitimate, non-discriminatory reasons for terminating Mack's employment with Colorworks; and (8) the reasons given for Mack's

9

termination are not a pretext for discrimination.  Therefore, Colorworks is entitled to summary judgment in its favor as to all of Mack's claims for discrimination.

### A.    Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  See Celotex Corp. V. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 LK.ED. 265 (1986)(quoting Fed.R.Civ.P. 56(c)).  There is a genuine issue of material fact only if the non-moving party has produced evidence that a reasonable fact-finder could return a verdict in its favor.  Waddell v. Valley Force Dental Assocs., Inc., 276 F.3d 1275. 1279 (11th Cir. 2001).  The evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986).  The non-moving party must make a sufficient showing on each essential element of the case for which she has the burden of proof. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552.

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. at 586, 106 S.Ct. 1348.  According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may not rest upon the mere

10

allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.

The non-moving party must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 f.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted. Anderson, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed. 2d 202.

Even when the evidence is viewed in the light most favorable to Mack, it is inconceivable that a reasonable fact-finder could return a verdict in his favor. Simply stated, Mack knew the rules. Mack broke the rules. Mack's employment was terminated. Similarly situated white employees knew the rules. Similarly situated white employees broke the rules. Similarly situated white employees were terminated. Therefore, for each of the reasons set out herein-below, Colorworks is entitled to a judgment as a matter of law as to Mack's claims of discrimination and Colorworks's motion for summary judgment is due to be GRANTED.

### B.   Mack Cannot Establish A Prima Facie Case of Race Discrimination.

In essence, Mack alleges Colorworks laid him off/terminated his employment while retaining a white employee – Bobby Elliott – who had only been employed three (3) weeks, as stated in his Amended Complaint, or two to three months, as stated in his deposition.  (Deposition of Xavier Mack, Ex. 1 ¶ 2, 9; Deposition of Xavier Mack, p. 26-27).  However, Colorworks contends that Mack was laid off and ultimately terminated for being disrespectful, tardiness, unwilling to work, and repeated insubordination.  (Deposition of Eric Burchfield, p. 77; Deposition of Eric Burchfield, Ex. 6).  Furthermore, it is undisputed that Bobby Elliott, a white painter, was terminated for missing too much work,  (Depositition of Eric Burchfield, p. 14); Jonathan McElwane, a white painter, was terminated for not showing up to work on time; and Chris Riley, a white painter, was terminated for insubordination.  Mack simply cannot make a prima facie case of discrimination because he cannot produce sufficient evidence to support a finding that he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class.  See Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003).

The same analytical framework applies to claims under Title VII and 42 U.S.C.

§ 1981. <u>Standard v. A.B.E.L. Services, Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998). Under Title VII, it is unlawful for an employer "to discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a). Under § 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a).  <u>Winborn v. Supreme Beverage Co. Inc.</u>, 12-16324.

To establish a prima facie case of discrimination based on disparate treatment in termination, a plaintiff may show that "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." <u>Maynard v. Bd. of Regents</u>, 342 F.3d 1281, 1289 (11th Cir. 2003).  In the disciplinary context, the most important factors "are the nature of the offenses committed and the nature of the punishments imposed." <u>Stone & Webster Constr., Inc. v. U.S. Dep't of Labor</u>, 684 F.3d 1127, 1135 (11th Cir. 2012).

Alternatively, in lieu of evidence of a similarly-situated comparator, a plaintiff may make out a prima facie case of racial bias in the application of discipline for a violation of work rules by showing that he did not actually violate the work rule. <u>Jones v. Gerwens</u>, 874 F.2d 1534, 1540 (11th Cir. 1989). However, when an

13

employee argues that he did not actually violate the rule in question, "an employer may rebut this allegation by showing its good faith, honest belief that the employee violated [the] rule." Stone & Webster Constr., 684 F.3d at 1136. If an employer terminates an employee "because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race.'" Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452-53 (11th Cir. 1987).

It is undisputed that Mack is a member of a protected class.  He is African-American. It is un disputed that Mack was qualified to work as a painter. Furthermore, it is undisputed that Colorworks terminated Mack's employment. However, there is no evidence to support a finding that Mack was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class.  To the contrary, it is un disputed that:

1.      Colorworks had five employees in 2007 when Mack started working part-time: Chris Riley (white), Chris Hawkins (white), Felix Hill (black), Christoff Bradley (white), and Jonathan McElwane (white). (Deposition of Xavier Mack, p. 16-17; Deposition of Eric Burchfield, p. 15).

2.      Chris Riley, Chris Hawkins, Felix Hill, Christoff Bradley, and Jonathan McElwane were still employed with Colorworks when Mack began

14

working full-time.  (Deposition of Xavier Mack, p. 18-19).

3.    Early October 2013, Burchfield pulled up on a job and caught Mack standing in the driveway talking on his telephone while the rest of the crew was painting.  (Deposititon of Eric Burchfield, p. 55).

4.    The next day, Burchfield pulled up to the same job site and found Mack sitting in the work van while the rest of the crew was painting. (Deposititon of Eric Burchfield, p. 56).

5.    Burchfield had previously reprimanded Mack for leaving a job site early after Birchfield instructed the crew Mack was working on not to leave until the job was finished.  (Deposition of Xavier Mack, p. 34-35).

6.    There was also at least one occasion when Burchfield came to a job site and found Mack sitting in the van eating a sandwich while the rest of the crew was working.  (Deposition of Xavier Mack, p. 37).

7.    Mack understood that Colorworks had a rule requiring everyone to take breaks and lunch at the same time.  (Deposition of Xavier Mack, p. 37).

8.    There was also occasions when Burchfield would come to a job site and find Mack taking a break while the rest of the crew was working. (Deposition of Xavier Mack, p. 37-39).

9.    Thanksgiving Eve, 2013, Burchfield pulled Mack to the side to talk to

15

him about returning to work late from lunch.   (Deposition of Xavier
Mack, p. 28-29, 41).

10.   After Burchfield met with the Colorworks employees, he left the job
site. He returned a few minutes later and caught Mack mocking him and
making fun of him in front of two other Colorworks employees.
(Deposititon of Eric Burchfield, p. 52-54).

11.   Mack was terminated by Colorworks after the incident on Thanksgiving
Eve, 2013;  (Deposition of Xavier Mack, p. 23-25, 65; Deposition of
Xavier Mack, Ex. 1 ¶ 2; Deposition of Xavier Mack, Ex. 4).

12.   Bobby Elliott, a white painter, was terminated for missing too much
work.  (Deposititon of Eric Burchfield, p. 14).

13.   The Monday after Thanksgiving, 2013, Burchfield sent Mack a text
telling Mack he needed to turn in his Colorworks keys, radio, and credit
card.   (Deposition of Xavier Mack, p. 42-43; Deposititon of Eric
Burchfield, p. 70).

14.   The Wednesday after Thanksgiving, 3013, Burchfield sent Mack a text
saying that he would take the necessary authoritative measures to
retrieve the Colorworks items if Mack did not return them and Mack did
not respond.  (Deposition of Xavier Mack, p. 43; Deposititon of Eric

Burchfield, p. 72).

15. Jonathan McElwane, a white painter, was terminated for tardiness. (Deposition of Xavier Mack, p. 57).

16. Chris Riley, a white painter, was terminated for insubordination. (Deposition of Xavier Mack, p. 57).

17. John Patrick, a white painter, was let go do to lack of work. (Deposititon of Eric Burchfield, p. 14-15).

18. As of December 2014, Colorworks had two employees: Felix Hill and Chris Hawkins.  (Deposititon of Eric Burchfield, p. 11-13).

Mack clearly cannot establish a prima facie case of racially discriminatory termination. Simply put, as stated, Mack cannot produce any evidence that he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class. Moreover, there is nothing in the record to suggest that his supervisors did not hold a good faith belief that he had committed the misconduct for which they terminated him.  Accordingly, because Mack cannot establish a prima facie case, the motion for summary judgment filed by Colorworks is due to be GRANTED.

17

**B.**     **Mack Cannot Establish That The Reasons Articulated For His Termination Are A Pretext For Race Discrimination.**

Assuming, *arguendo*, Mack could establish a prima facie case of discrimination, summary judgment is still due to be granted in favor of Colorworks because Mack cannot establish that Colorworks's asserted reasons for his termination are pretextual.

When a plaintiff has established a prima facie case of discrimination, the burden of production then shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002).  If the defendant is able to do so, the burden shifts back to the plaintiff to show that this reason is really a pretext for unlawful discrimination. Id. at 1272-73. The ultimate burden of proving that the employer intentionally discriminated against the employee remains at all times with the plaintiff. Id. at 1273. A plaintiff must prove pretext by a preponderance of the evidence. Meeks v. Computer Associates Intern., 15 F.3d 1013, 1019 (11th Cir. 1994).

The undisputed evidence, even when viewed in the light most favorable to the Plaintiff, is sufficient to support a finding that:

18

1.    Early October 2013, Burchfield pulled up on a job and caught Mack standing in the driveway talking on his telephone while the rest of the crew was painting.  (Deposititon of Eric Burchfield, p. 55).

2.    The next day, Burchfield pulled up to the same job site and found Mack sitting in the work van while the rest of the crew was painting. (Deposititon of Eric Burchfield, p. 56).

3.    Burchfield had previously reprimanded Mack for leaving a job site early after Birchfield instructed the crew Mack was working on not to leave until the job was finished.  (Deposition of Xavier Mack, p. 34-35).

4.    There was also at least one occasion when Burchfield came to a job site and found Mack sitting in the van eating a sandwich while the rest of the crew was working.  (Deposition of Xavier Mack, p. 37).

5.    Mack understood that Colorworks had a rule requiring everyone to take breaks and lunch at the same time.  (Deposition of Xavier Mack, p. 37).

6.    There was also occasions when Burchfield would come to a job site and find Mack taking a break while the rest of the crew was working. (Deposition of Xavier Mack, p. 37-39).

7.    Mack was late returning from lunch on Thanksgiving Eve, 2013. (Deposition of Xavier Mack, p. 28-29, 41).

19

8.     Thanksgiving Eve, 2013, Burchfield pulled Mack to the side to talk to him about returning to work late from lunch.  (Deposition of Xavier Mack, p. 28-29, 41).

9.     After Burchfield spoke privately with Mack about returning to work late from lunch, Burchfield called the whole crew up to discuss the matter. (Deposition of Xavier Mack, p. 34; Deposition of Eric Burchfield, p. 46-51).

10.    After Burchfield met with the Colorworks employees, he left the job site.  He returned a few minutes later and caught Mack mocking him and making fun of him in front of two other Colorworks employees. (Deposition of Eric Burchfield, p. 52-54).

11.    Mack was terminated by Colorworks after the incident on Thanksgiving Eve, 2013.  (Deposition of Xavier Mack, p. 23-25, 65; Deposition of Xavier Mack, Ex. 1 ¶ 2; Deposition of Xavier Mack, Ex. 4).

12.    On the Sunday after Thanksgiving, 2013, Burchfield sent Mack a text telling Mack he did not have any work for him.  (Deposition of Xavier Mack, p. 24-25; Deposition of Eric Burchfield, p. 65-66).

13.    Monday after Thanksgiving, 2013, Mack sent Burchfield a text asking Burchfield why the other guys were working if work was slow.

20

Burchfield's response was something like "that's just the way it is." Mack then said "[f]or a guy that's been with you for three years, work slow, but for a guy that's only been with you for two to three months, he's working, I don't understand.  Burchfield then asked Mack "[d]o you understand joking and laughing at the boss with other employees is detrimental to your job?"  (Deposition of Xavier Mack, p. 26-27; Deposition of Eric Burchfield, p. 69-70).

14.    The Monday after Thanksgiving, 2013, Burchfield sent Mack a text telling Mack he needed to turn in his Colorworks keys, radio, and credit card.  (Deposition of Xavier Mack, p. 42-43; Deposition of Eric Burchfield, p. 70).

15.    The Wednesday after Thanksgiving, 3013, Burchfield sent Mack a text saying that he would take the necessary authoritative measures to retrieve the Colorworks items if Mack did not return them.  Mack did not respond.  (Deposition of Xavier Mack, p. 43; Deposition of Eric Burchfield, p. 72).

16.    After Mack was terminated, he filed a claim for unemployment against Colorworks because Colorworks was his employer.  (Deposition of Xavier Mack, p. 47-48).

21

17.   In its response to Mack's application for unemployment, Colorworks indicated that Mack's employment was terminated for disrespect, tardiness, unwilling to work, and repeated insubordination. (Deposition of Eric Burchfield, p. 77; Deposition of Eric Burchfield, Ex. 6).

When an employer offers an employee's violation of a work rule as the justification for termination, the employee can "prove pretext by showing either that she did not violate the work rule or that, if she did, other employees not within the protected class who engaged in similar acts were not similarly treated." Sparks v. Pilot Freight Carriers, Inc., 830 F.2d 1554, 1563 (11th Cir. 1987). A plaintiff must show pretext with "concrete evidence in the form of specific facts." Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009). Mere "conclusory allegations and assertions" will not suffice. Id. When considering whether an employee's termination based on alleged misconduct was merely a pretext, the proper inquiry is whether the employer believed that the employee was guilty of misconduct and whether that belief was the reason for the employee's discharge. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

Mack understood that Colorworks had a rule requiring everyone to take breaks and lunch at the same time. (Deposition of Xavier Mack, p. 37). Mack continued to break the rule repeatedly after being previously warned. After Mack was confronted

22

by his supervisor, Mack was caught mocking the supervisor in front of coworkers. Mack was subsequently asked to return property belonging to the Company and he failed or refused to respond. Colorworks had an honest good faith reasonable belief that Mack's had engaged in inappropriate conduct and said conduct was unacceptable to Colorworks. As a result, Mack was terminated. Similarly situated white employees who engaged in substantially similar conduct were also terminated.

There are no genuine issues of material fact. Mack cannot make out a prima facie case of discrimination. Mack does not have any evidence to support a finding that the reasons articulated for his termination are a pretext for discrimination. In fact, Mack can offer nothing more than"conclusory allegations" to challenge the evidence that his supervisors believed—at the time of his termination—that he had violated company rules. See <u>Bryant</u>, 575 F.3d at 1308. Accordingly, Colorworks is entitled to a judgment as a matter of law and its motion for summary judgment is due to be GRANTED.

## IV.    CONCLUSION

**WHEREFORE**, for the foregoing reasons, Colorworks Painting Company, LLC, respectfully requests this Honorable Court to grant its Motion for Summary Judgment and tax costs against the Plaintiff.

Respectfully submitted,


s/ Scott A. Gilliland
Scott A. Gilliland (ASB-6604-l67s)
Counsel for Colorworks

Law Office of Scott A. Gilliland
400 Vestavia Parkway Suite 100
Vestavia Hills, AL 35216
Phone: (205)978-8800
Fax: (205)978-8811


## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2015, I electronically filed the foregoing with the Clerk of the Court  using the CM/ECF system, which will send notification of such filing to the following:

Counsel for Plaintiff
Gregory O. Wiggins, Esq.
Kevin W. Jent, Esq.


s/Scott A. Gilliland
Counsel for Colorworks

24