FILED

2015 Mar-16  PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| XAVIER MACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER: |
| | ) | 2:13-cv-02263-HGD |
| | ) | JURY DEMAND |
| | ) | |
| COLORWORKS PAINTING | ) | |
| COMPANY, LLC and | ) | |
| ERIC BIRCHFIELD, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS COLORWORKS
PAINTING COMPANY, LLC'S AND ERIC BIRCHFIELD'S
MOTIONS FOR SUMMARY JUDGMENT[1]**

The defendants, Colorworks Painting Company, LLC, ("CPC") and Eric

Birchfield ("Birchfield") have moved for summary judgment against the plaintiff,

Xavier Mack ("Mack").[2] The defendants argue "that there are no genuine issues of

---

[1] The defendants, Colorworks Painting Company, LLC and Eric Birchfield, have filed separate summary judgment motions. Because, both motions have the same alleged "Undisputed Relevant Facts," and make basically the same arguments, except for Birchfield's individual liability argument under §1981, plaintiff will respond to both motions in this one brief. Therefore, plaintiff's response to **both** summary judgment motions will be longer than the required 30 page response - **by only one page.**

[2] In both of the defendants' briefs, the defendants spell Birchfield with an "i" but in the body of the briefs spells Birchfield with a "u." Plaintiff is unsure which spelling is correct; however, will use the spelling of Birchfiled.

material fact with respect to the allegations in the Complaint or Amended Complaint..." As will be clearly demonstrated in this response, nothing could be further from the truth. In fact, as the Court will clearly see after reviewing the actual facts, this is a summary judgment that should have never been filed and, as such, summary judgement is due to be denied.

## I.     Response To Defendants' Undisputed Material Facts[3]

1.     Admitted, but irrelevant.

2.     Admitted, but irrelevant.

3.     Admitted, but irrelevant.

4.     Admitted.

5.     Admitted.

6.     Admitted.

7.     Admitted.

8.     Admitted.

9.     Admitted.

10.     Admitted.

11.     Admitted.

---

[3]Many of the facts stated by the defendants are not "material" facts and are simply irrelevant statements made by the plaintiff and defendant Birchfield during their respective depositions.

12.    Admitted.

13.    Admitted.

14.    Admitted.

15.    Admitted.

16.    Admitted, but irrelevant.

17.    Admitted, but irrelevant.

18.    Admitted, but irrelevant.

19.    Denied, Birchfield never pulled up on a job and caught the plaintiff standing in the driveway talking on his telephone while the rest of the crew was working. (*See* Plaintiff's Exhibit A - Declaration of Xavier Mack).   In addition, the defendant Birchfield has no paperwork nor are there any witnesses to substantiate the allegation. (Exhibit C - Deposition of Eric Birchfield, pp. 55-56).[4]

20.    Denied, incident as described by defendant never happened. (Exhibit A).

21.    Denied as written. Birchfield had not "previously" reprimand the plaintiff for leaving a job site early. Birchfield did reprimand the plaintiff, and only the plaintiff, on this one occasion for leaving a job in Harpersville, Alabama. However, as admitted

---

[4]In CPC's and Eric Birchfield's Initial Disclosures and Responses to plaintiff's interrogatories, both defendants stated that the only witnesses that would be familiar with the facts of this lawsuit was the plaintiff and Birchfield. (Exhibits D - Initial Disclosures and E - Interrogatory responses ## 6&7).

by the defendant in its material fact 12, the plaintiff was only a painter, never a lead man, and the two lead men, who were the plaintiff's supervisor, made the decision to leave the job early. Plaintiff only followed his supervisors' instructions. (Exhibit B - Xavier Mack deposition, pp. 34-36).

22.   Denied as written. Plaintiff was specifically ask during his deposition:

Q:   And do you remember having a discussion about why you were sitting in the van eating a sandwich when your co-worker was working?

A:   No, I don't remember having a *conversation* about me sitting down eating a sandwich in the van, but I could possibly say over a three year period, he *could have came on the job and seen me eating a sandwich.*

Exhibit B, p. 37; Exhibit A.

23.   Denied and irrelevant. Plaintiff did not testify, at page 37, as cited by the defendant, that he understood that Colorworks had a rule requiring everyone to take breaks and lunches at the same time. Birchfield testified that the company did not have any written rules or policies. (Exhibit C, p. 35).

24.   Denied. Plaintiff testified, that due to nature of the job, there may have been occasions where he took a break while others continued to work because as he testified "he was the last man in, and his job was always the last to be completed. (Exhibit B, pp. 37-39).

25.   Denied, as written. Plaintiff testified that the supervisors of the crew plaintiff

was working with decided to take an hour for lunch. Mack did not make the decision that lunch would be an hour, he was simply following orders from his supervisor. (Exhibit B, pp. 28-30). In lieu of discussing the hour long lunch with everyone, Birchfield initially only singled out the plaintiff to voice his displeasure about the amount of time the crew took for lunch, despite the fact that, Birchfield knew the lead man determined the amount of time the crew would take for lunch. *Id.*, p. 30.

26-27.     See response to #25.

28.     Denied. Plaintiff testified that there had never been an occasion where Birchfield had caught the plaintiff mocking him, nor had he ever mocked Birchfield. (Exhibit B, p.28).

29.     Denied. Plaintiff testified he was told he was laid off because work was slow. (Exhibit B, pp. 24-25). Exhibit 1, paragraph 2 and Exhibit 4, to plaintiff's deposition, cited by the defendant to support this fact, does not support the defendant's alleged material fact.  In the report filed by Birchfield with the Jefferson County Sheriff's Department, Birchfield confirms the plaintiff's testimony that he was told by Birchfield that he was laid off due to work being slow.  (Exhibit G).

30.     Denied. Plaintiff testified that Birchfield sent him a text the Sunday after Thanksgiving, 2013, telling him "work was slow." (Exhibit B, pp. 24-25).

31.     Admitted, but clarified. Plaintiff testified that he had no idea what Birchfield

was referring to when he made the comment "do you understand joking and laughing at the boss with other employees is detrimental to your job" because there had not been an incident where he mocked the boss in front of other employees. (Exhibit B, pp. 27-28). Plaintiff testified that there had never been an incident wherein he had mocked Birchfield. (Exhibit B, pp. 27-28).

32.    Admitted.

33.    Admitted, but irrelevant. Elliot was terminated for laying out, being sick every week. There is no evidence that the plaintiff laid out of work or was sick every week. Elliot was still employed with the defendant as of April, 2014, some 5 month after the plaintiff was laid off due to the alleged fact "work was slow." (Exhibit F, Interrogatory response #4).

34.    Admitted, but irrelevant.

35.    Admitted, but irrelevant.

36.    Admitted, but irrelevant.

37.    Admitted, but irrelevant.

38.    Admitted, but irrelevant.

39.    Denied, Plaintiff testified he was told he was laid off because work was slow. Plaintiff never testified that Birchfield told him he was terminated. (Exhibit B, pp. 24-25). Birchfield admits he never told plaintiff he was terminated. (Exhibit C, p.76). In

addition, Birchfield filed a Alabama Uniform Incident/Offense Report with the Jefferson County Sheriff's Office on May 14, 2014, some 6 months after the plaintiff was laid off, and some 5 months after the plaintiff had filed his Complaint, wherein he told the Deputy that "[H]e had to lay off Xavier Mack due to work being slow." The incident report was in regards to the plaintiff allegedly failing to return the company property. However, the company property had been returned some 6 months *prior* to Birchfield filing his report. (Exhibit G - Incident Report).

40.    Admitted that Birchfield told the Department of Industrial Relations the facts as stated in material fact #40 but, denied as to his statements being true.

41.    Admitted, but irrelevant, plaintiff does not have a claim that he worked in a racially hostile work environment.

42.    Denied, Birchfield testified that McElwane was a part-time employee who worked "on and off" with the company and had just recently worked with the company approximately two months prior to his (Birchfield) deposition being taken on December 2, 2014. (Exhibit C, p. 15)  Birchfield never testified that McElwane was terminated. In addition, the defendant has not submitted any evidence that Riley was terminated or the reason(s) he was terminated.

43.    Denied and irrelevant, Birchfield did not testify that Patrick was let go, he testified that he went back to Tennessee, supposedly on his own accord, when the

7

work ran out. (Exhibit C, p. 14-15).

44.     Admitted, but irrelevant.

45.     Admitted, but irrelevant. In addition, in response to plaintiff's interrogatory #4 the defendant stated, that as of May 14th, the date of defendants' answers, it employed 5 employees. The interrogatory was answered on May 14, 2014.

**II.     Statement of the Case**

It is undisputed that plaintiff was employed by of Colorworks Painting Company, LLC from 2007 until 2013 as a painter, not a lead man. It is undisputed that Eric Birchfield is the sole owner of Colorworks Painting Company, LLC. During his employment, the plaintiff did not receive one written warning in regards to **any** aspect of his job performance. (Exhibit C, p. 59).

On or about December 3, 2013, the plaintiff was informed that he did not need to report to work because work was slow. Upon driving by Colorworks place of business, the plaintiff noticed that all of the employees employed by Colorworks had reported to work including a white employee who had only been with the company for approximately 2-3 months and had far less experience than the plaintiff. The plaintiff questioned Birchfield as to why a less senior and less experienced person was retained while he was let go and Birchfield simply replied "that's the way it is." (Exhibit B, pp. 26-27).

Upon being informed he was laid off from his job, the plaintiff filed for unemployment compensation. The defendant opposed plaintiff's application and, a result of the untruths told by the defendant, the plaintiff did not receive his unemployment. Upon learning that he was no longer employed, Plaintiff filed the instant lawsuit alleging that he had been discriminated against in violation of 42 U.S.C. §1981.  Since the filing of this lawsuit, the decision-maker, Birchfield, has articulated numerous inconsistent reasons as to why the plaintiff was laid off/terminated and a white employee with less seniority and experience was retained. Birchfield's credibility has been severely damaged and, viewing the evidence in a light most favorable to the non-moving party, the defendants' motions for summary judgment are due to be denied.

## III.   Plaintiff's Statement Of Undisputed Facts

1.   Birchfield admits that there are "***glaring inconsistencies***" in his version as to why the plaintiff was actually laid off/terminated from his employment. (Exhibit C, pp. 91-92).

2.   Birchfield admits that he never told the plaintiff he was terminated. (Exhibit C, p. 76).

3.   Birchfield admits that the only reason he told the plaintiff that he was being laid off was because he (Birchfield) didn't have any work for him. (Exhibit C, p.76).

The plaintiff testified that, at the time he was laid off, work was not slow. (Exhibit B, p. 25).

4.      Birchfield admits that, at the time he informed the plaintiff that he didn't have any work for him, he retained a white employee who had less experience and less seniority than the plaintiff. (Exhibit C, p. 92).

5.      Birchfield admits that prior to letting the plaintiff go he had never terminated, suspended or issued any written discipline to the plaintiff for any of the alleged events that he now claims led to the plaintiff's termination. (Exhibit C, pp. 58-59).

6.      Birchfield admits that if an employee was not performing up to his (Birchfield) expectations or was being tardy or committing other violations that these type of acts would affect the employees ability to receive a pay raise. (Exhibit C, p. 41).

7.      Birchfield testified that the plaintiff was allegedly insubordinate towards him on at least 10 occasions. (Exhibit C, p. 78).

8.      Birchfield testified that the plaintiff was allegedly tardy to work over a 3 year period over 150 times, but he never issued any written discipline to him. (Exhibit C, p. 79).

9.      Birchfield testified that the plaintiff was allegedly disrespectful towards him at least 25 times, but he never terminated or issued any written discipline towards him. (Exhibit C, p. 79).

10.    Despite that fact that the plaintiff was allegedly tardy over 150 times, disrespectful towards Birchfield at least 25 times, and insubordinate at least 10 times, Birchfield admits that, during his employment, the plaintiff went from part-time employee to full time employee.  (Exhibit C, pp. 40, 59; Exhibit B, pp. 10, 12, 21).

11.    Despite that fact that the plaintiff was allegedly tardy over 150 times, disrespectful towards Birchfield at least 25 times, and insubordinate at least 10 times, Birchfield admits that during his (Mack) employment, the plaintiff received at least two pay raises. (Exhibit C, pp. 40-41, 59).

12.    Birchfield admits that the Colorworks has no written discipline policy, no written sexual harassment policy, no written attendance policy, no lunch break policy and no layoff policy.  (Exhibit C, p. 35, 51).

13.    Birchfield admits that he *told the plaintiff he did not have any work for him* the week following Thanksgiving. (Exhibit C, p. 65, 67).

14.    Birchfield did not tell the State of Alabama Department of Labor Unemployment Compensation Division that he informed the plaintiff that he was laid off due to work being slow. (Exhibit C, p. 75).

15.    On the form filed with State of Alabama Department of Labor Unemployment Compensation Division in December, 2013, Birchfield informed the Department that the plaintiff was *terminated, not laid off, for disrespect, tardiness, unwilling to work*

***and repeated insubordination.*** (Exhibit C, p. 77; Exhibit H - State of Alabama Department of Labor Unemployment Compensation Division form filed by Birchfield).

16.     On May 14, 2014, Birchfield filed an Alabama Uniform Incident/Offense Report with the Jefferson County Sheriff's Department wherein he told the deputy that he had to lay the plaintiff off due to "***work being slow***". (Exhibit G).

17.     In the Alabama Uniform Incident/Offense Report, Birchfield also states that he later decided to terminate the plaintiff because he could not get the company's equipment returned.  (Exhibit G).

18.     Birchfield testified that, although the plaintiff was allegedly mocking him and making fun of his speech in front of other employees, none of the employees were laughing during the plaintiff's alleged mocking. (Exhibit C, 54-55).

19.     Birchfield testified that he considered the plaintiff to be an honest individual, who never stole from him, who he trusted.   (Exhibit C, pp. 71, 94).

20.     Birchfield testified that although he considered Mack to be a poor employee he has no documentation to back up any of his (Mack) alleged job deficiencies. (Exhibit C, 59-60).

21.     Birchfield assisted in preparing both the company's and his own interrogatory responses and has testified that he has reviewed them and they are true and correct

to the best of his knowledge. (Exhibit C, p. 19-20).

22.    Birchfield nor the company has identified one witness, other than himself and the plaintiff, in his or the company's Initial Disclosures or in his responses to plaintiff's first interrogatories that could collaborate any of his (Birchfield) reasons for laying the plaintiff off while retaining a less senior less experienced white individual. (Exhibit G; Exhibit H; Exhibit C, p. 92).

23.    Birchfield testified that, during the plaintiff's employment, he (Mack) never held the position of lead men and, lead men decide when to take lunch breaks and how long the lunch breaks will last. (Exhibit C, pp. 44-45).

24.    Birchfield testified that yet *another reason* the plaintiff was laid off was because the Plaintiff and the lead man took an hour lunch. (Exhibit C, pp. 47-51).

25.    Birchfield testified that he trusted the plaintiff a lot and, in fact, had given Mack the company credit card, which Mack never misused, the keys to the office, which he never misused and even gave the plaintiff the keys to the company van. (Exhibit C, pp. 93-94).

26.    Plaintiff testified that there was never a time wherein Birchfield came to the job site and saw the plaintiff sitting on a bucket while the crew was working. (Exhibit B, p. 40; Exhibit A).

27.    Plaintiff testified that there was never an incident when Birchfield came to the

job site and the crew was painting a door and the plaintiff was sitting down. (Exhibit B, p. 40; Exhibit A).

28.    Plaintiff testified that Birchfield never had a discussion with the plaintiff about leaving job site or taking a break or lunch without squaring the job. (Exhibit B, pp. 40-41).

29.    Plaintiff testified that Birchfield never had any discussions with him about showing up to work on time. (Exhibit B, p. 41).

30.    Birchfield testified that he never knew the plaintiff to just leave a job site. (Exhibit C, p. 44).

## IV. **Summary Judgment Standard**

The standard of review for a summary judgment is well-established.   The Eleventh Circuit has stated the standard as follows:

> We review the granting of a motion for summary judgment de novo, applying the same standards used by the district court.  Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted, if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.

> The basic issue before the court on a motion for summary judgment is whether

14

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. If reasonable minds could differ on the inferences arising form undisputed facts, then a court should deny summary judgment.

> Once the movant . . . satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to come forward with specific facts showing that there is a genuine issue for trial. Otherwise stated, the nonmovant must demonstrate that there is indeed a material issue of fact that precludes summary judgment. A mere scintilla of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

*Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)(internal citations and quotations omitted).

Rule 56 provides that a summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The procedure a district court in the Eleventh Circuit must follow in deciding motions for summary judgment is set out in *Clark v. Coats & Clark*, 929 F.2d 604 (11th Cir. 1991):

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed an issue of material fact that precludes summary judgment.

*Id.* at 608.

"As the moving party, [the defendant] has the burden of showing the absence of a genuine issue of material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993). The district court cannot weigh conflicting evidence or make credibility determinations; instead, "'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Hairston*, 9 F.3d at 919 (quoting *Anderson*, 477 U.S. at 255). In order to make clear that the non-moving party has no duty to present evidence showing a disputed issue of fact unless and until the moving

party has met its initial burden, the *Coats & Clark* court analyzed *Adickes* as holding the following:

> To summarize, the *Adickes* rule remains the general rule. The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party being the burden of proof at trial will not be able to meet that burden. Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial.

*Coats & Clark*, 929 F. 2d at 608.

If the moving party carries this burden and shows the lack of a material question of fact and its entitlement to judgment as a matter of law, then -- and only then -- the party opposing the motion must show the existence of a genuine issue of material fact. *Hairston*, 9 F.3d at 918 (citing *Matsushita*, 475 U.S. at 586-87; *Coats & Clark*, 929 F.2d at 608). The substantive law defines which facts are "material." *Anderson*, 477 U.S. at 248. A factual dispute is "genuine" if "a reasonable jury could return a verdict for the non-movant," and there is "a real basis in the record" for the factual dispute. *Hairston*, 9 F.3d at 919 (citing *Anderson*, 477 U.S. at 248; *Matsushita*, 475 U.S. at 586-87)).

A plaintiff attempting to prove employment discrimination, including sex and/or age discrimination, may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *U.S. Postal Service v. Aikens*, 460 U.S. 711, 714-715 (1983); *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1495 (11th Cir. 1987).

The indirect method of showing discrimination is set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). The burden is initially on the plaintiff to show a *prima facie* case of discrimination.  Upon this showing, the burden of production shifts to the employer to articulate legitimate, nondiscriminatory reasons for the employment action taken. *Burdine*, 450 U.S. at 258.  If the defendant satisfies this burden, the plaintiff must prove that the articulated reasons are a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804-805.

Once the employer articulates a legitimate reason for the action, the presumption of discrimination created by the *prima facie* case disappears from the case. *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2747 (1993).  However, this does not mean that evidence of pretext is insufficient to prove discrimination, but

18

only that proof of pretext is not per se proof of discrimination. 'The disappearance of the presumption ... does not compel summary judgment in favor of a Title VII defendant ... The 'ultimate question' remains the same:  whether the plaintiff can persuade the trier of fact that she has been the victim of intentional discrimination." *See Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir. 1994).

The quantum of proof necessary to defeat a motion for summary judgment when the defendant presents a legitimate, non-discriminatory reason for its decision was discussed by the Eleventh Circuit in *Howard*.  The Eleventh Circuit, interpreting *St. Mary's Honor Center*, stated:

> *St. Mary's* holds that proof that a defendant's articulated reasons are false is not proof of intentional discrimination; it is merely evidence of intentional discrimination. However, evidence of intentional discrimination is all a plaintiff-appellant needs to defeat a motion for summary judgment.  That evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proffered explanation.

*Howard*, 32 F.3d at 525.  "Under *St. Mary's*, a plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Id.* at 526; *see also Combs v. Plantation Patterns*, 106 F.3d 1519, 1532 (11th Cir. 1997)("Once a plaintiff has established a prima facie case and has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for

its actions, that alone is enough to preclude entry of judgment as a matter of law.").

## V. <u>Argument</u>

### A.   **Prima Facie Case**

A plaintiff may generally establish a *prima facie* case of race discrimination under 42 U.S.C. §1981, by showing that (1) he is a member of a protected class;  (2) he suffered an adverse employment action; (3) he was qualified for her position; and (4) a similarly situated person outside of the plaintiff's protected class received more favorable treatment or the plaintiff was replaced with someone outside the protected class.  *Bolton v. Potter,* 198 Fed.Appx. 914, 916 (11th Cir. 2006); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir. 1984). The Eleventh Circuit has generally "eschewed an overly strict formulation of the elements of the *prima facie* case," and has noted that the burden on the plaintiff is not onerous. *Tippie v. Spacelabs Medical, Inc.*, 180 Fed.Appx 51, 54 (11th Cir. 2006). The plaintiff can easily meet his *prima facie* case using this standard.

Plaintiff is African-American and was laid off/terminated. There is no dispute that he was qualified for his position and a white employee with less experience and seniority was treated more favorably by being retained, even though the business was allegedly slow. The plaintiff easily meets this initial burden by presenting evidence which establishes his *prima facie* case.

20

**B.     The Defendant's Articulated Reason(s) are a Pretext for Race Discrimination.**

A plaintiff can demonstrate pretext by pointing to "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons ... that a reasonable factfinder could find them unworthy of credence ... The trier of fact may infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Hamilton v. Montgomery County Bd. of Educ.,* 122 F.Supp. 1273,1281 (M.D. Ala. 2000)(citations omitted).  The plaintiff is allowed to produce evidence "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997).

In the instant case, the defendants have presented more than sufficient evidence that would permit a reasonable fact-finder to conclude that the defendants' articulated reasons are at best questionable, and in reality, not believable at all.  Even after an employer merely articulates a legitimate, nondiscriminatory reason for the plaintiff's termination, the trier of fact "may still consider the evidence establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefore....on the issue of whether the defendant's explanation is pretextual.'"  *Reeves v. Sanderson Plumbing Products, Inc.,* 520 U.S. 133, 143, 120 S.Ct. 2097, 2107, 147 L.Ed.2d 105

21

(2000)(citing *Burdine* at 255, n. 10, 101 S.Ct. 1089).

A plaintiff attempting to show pretext under the *McDonnell-Douglas/Burdine* framework must "demonstrate such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs, supra* at 1538 (quoting *Sheridan v. DuPont*, 100 F.3d 1061, 1072 (3d Cir. 1996). Once the plaintiff has met this burden the Court "may not pretermit the jury's ability to draw inferences from the testimony, including the inference of intentional discrimination drawn from an unbelievable reason proffered by the employer." *Sheridan, supra* at 1072. The present plaintiff can point to several pieces of evidence from which a reasonable factfinder could infer a discriminatory motive from the defendants' actions.

Plaintiff submits that the defendants' articulated reason(s) for his layoff/termination are a pretext for discrimination. Simply put, there is too much contradictory evidence found in the defendants' own documentation to grant summary judgment.

In the instant case, the defendant Birchfield, the decisionmaker himself, testified that the reasons he articulated to the plaintiff, to the State of Alabama Department of Labor Unemployment Compensation Division and to Jefferson County Sheriff's Department are **"glaringly inconsistent."** (Exhibit "C", pp. 82-92). This

admission alone is enough to create a question of material fact that requires this Court to deny the defendants' motion.

The defendants have articulated at least 3 different and totally inconsistent reasons why the plaintiff was laid off/terminated and a white employee with less seniority and experience was retained: Defendants argue that, (1) Plaintiff was laid off due to the company not having any work for the plaintiff; (2) Defendants then argue the plaintiff was terminated for failing to return company property; and (3) Defendants then argue the plaintiff was terminated for being disrespectful, tardy to work and being unwilling to work.

To add to the confusion as to why the plaintiff was laid off/terminated, the defendants also attempt to argue that there were allegedly 6 other contributing factors that caused Birchfield to terminate the plaintiff: (1) the plaintiff was terminated because in early October, 2013, Birchfield allegedly pulled up on a job and caught the plaintiff standing in the driveway talking on the phone while the rest of the crew was working. Plaintiff denies that his event ever happened. Exhibit A. (2) The next day, Birchfield pulled up to the same job site and found the plaintiff sitting in the work van while the rest of the crew was working. The plaintiff denies this event ever happened.  Exhibit A.  (3) Birchfield had previously reprimanded the plaintiff for leaving a job site early. The plaintiff denies this event ever happened. Exhibit A. (4)

There was at least one occasion when Birchfield came to a job site and found the plaintiff sitting in the van eating a sandwich, The plaintiff denies this event ever happened. Exhibit A. (5) There was one occasion when Birchfield came to the job site and found the plaintiff taking a break while the rest of the crew was working. The plaintiff denies this ever happened. Exhibit A. (6) On Thanksgiving Eve, the plaintiff was late returning to lunch. The plaintiff denies this ever happened.

To further support its argument that Birchfield was justified in terminating the plaintiff and the plaintiff's race had nothing to do with his being laid off/terminated, Birchfield testified that the plaintiff was insubordinate to him (Birchfield) on at least 10 occasions, disrespectful to Birchfield on at least 25 occasions, and was tardy to work on at least 150 occasions. If Birchfield's testimony was true, which plaintiff submits it is not, the plaintiff would have been a very poor employee, deserving to be terminated. However, when one learns that the plaintiff was promoted from part-time to full-time and that the plaintiff received two pay raises during his employment, one would have a very difficult time believing Birchfield's testimony.

The final nail in Birchfield's coffin is, that despite the picture he tries to paint of the plaintiff, Birchfield does not have one witness or one written warning issued to the plaintiff during his entire employment. Plaintiff would submit that, any employer who had an employee that allegedly committed as many violations of the

companies work rules as the plaintiff allegedly committed, that there would have be

least one witness, who could come forward and support Birchfield's testimony. In

addition, one would expect to find at least one written warning issued to an employee

if, in fact, the allegations were remotely true. The plaintiff has testified that the events

in question either didn't happen at all or were the result of the lead man on the job

making the decision to perform a certain act. Plaintiff has produced more than

sufficient evidence which shows that the defendants' reasons for his termination are

nothing more than a pretext for discrimination.

When all of this evidence is viewed together in a light most favorable to the

plaintiff, the defendants' Motion for Summary Judgment is due to be denied.

### C.    Response To Defendants' Distorted Version Of The Evidence

At page 9 of Colorworks' Motion, the defendant (CPC) sets out 8 alleged

events that it believes entitles it to summary judgment. Unfortunately, most of the

events listed by the defendant either didn't happen or are irrelevant to the issue as to

whether the defendant is entitled to summary judgment. The events are: (1) Mack was

reprimanded for leaving the job site early. The plaintiff testified that the decision to

leave the job site early was made by the lead man on the job, his supervisor, and

plaintiff was only following his supervisors direction. (Exhibit B, pp. 34-36); (2)

plaintiff was reprimanded for not taking lunch breaks with the rest of the crew,

contrary to the Colorworks' work rules. Untrue - Birchfield testified the company did not have any written work rules and plaintiff testified lunch breaks were taken based on the job they were working and what the lead man decided. (Exhibit B, pp. 37-40); (3) Bobby Elliot, white, was terminated for missing work. This fact is totally irrelevant to the issue now before the court, i.e was the plaintiff discriminated against when he laid off from his employment; (4) McElwayn, white, was terminated for not showing up to work on time. Simply not true, Birchfield testified, at page 15, that McElwayne worked on and off with the company and had last worked with the company approximately 2 months prior to his deposition. Birchfield never testified the employee was terminated; (5) Riley, white, was terminated for insubordination. The defendant has not present any documentary evidence to support this alleged fact and plaintiff has now testified that he is not sure of the exact reason why Riley was terminated. (Exhibit A); (6) Colorworks had reasonable good faith belief that Mack had mocked Birchfield. Plaintiff has testified that the mocking event simply never happened, therefore, the alleged mocking incident is in dispute and a jury must resolve this issue. In addition, based on all of the inconsistencies in Birchfield's testimony, it is hard to fathom that Birchfield had a reasonable good faith to believe in anything. (Exhibit B, p. 28); (7) Colorworks had legitimate non-discriminatory reasons for terminating plaintiff. Every reason now articulated by the defendant has

been put into serious doubt either by the plaintiff's testimony and or Birchfield's own testimony and documents; (8) the reasons given for Mack's termination are not a pretext for discrimination.

First, Birchfield testified that he never informed the plaintiff he was terminated. Second, Birchfield only came up these alleged reasons for plaintiff's termination **after** the plaintiff applied for his unemployment. Birchfield knew the plaintiff was going to receive his unemployment if the real reason for the plaintiff seeking unemployment was because he had been laid off because work was slow. Birchfield had to come up with a reason or reasons to disqualify the plaintiff from his unemployment, so he basically lied to the State when he responded to plaintiff's application for benefits. The fact that Birchfield perjured himself becomes perfectly clear when one looks at the reason articulated by Birchfield to the Jefferson County Sheriff's Department in May 2014. In this report, Birchfield admits "he had to lay the plaintiff off due to lack of work" and that he later allegedly decided to terminate the plaintiff because the plaintiff did not promptly return the company's equipment. Birchfield told the state plaintiff was terminated for being disrespectful, tardy and unwilling to work. Birchfield never once mentioned to the Deputy that the plaintiff was terminated because he was allegedly disrespectful, tardy or unwilling to work. Birchfield told the Deputy that he decided to terminate the plaintiff because the

plaintiff would not return company property. When these inconsistencies were pointed out to Birchfiled during his deposition, Birchfield admitted that there were "glaring inconsistencies" in what he told the State and what he told the Sheriff's department. (Exhibit C, pp. 81-92).

In addition, Birchfield did not tell the State or the Deputy that the plaintiff was terminated because he left the job site early, he did not take lunch breaks with the rest of the crew, contrary to the Colorworks work rules, the plaintiff mocked Birchfield in front of other workers, in early October, 2013, Birchfield allegedly pulled up on a job site and caught the plaintiff standing in the driveway talking on the phone while the rest of the crew was working, the next day Birchfield pulled up to the same job site and found the plaintiff sitting in the work van while the rest of the crew was working, there was at least one occasion the Birchfield came to a job site and found the plaintiff sitting in the van eating a sandwich, there was one occasion when Birchfield came to the job site and found the plaintiff taking a break while the rest of the crew was working or that on Thanksgiving eve the plaintiff was late returning to lunch.  Despite all of these inconsistencies, the defendants have now moved for summary judgment and ask this Court to believe that the defendant (CPC) and Birchfield had a legitimate, non discriminatory reason for terminating the plaintiff and that it is entitled to summary judgment. Plaintiff submits that, because Birchfield

has changed his articulated reason(s) for terminating the plaintiff so many times, summary judgment is due to be denied.

**D.     Birchfield Can Be Held Personally Liable Under § 1981.**

In Birchfield's motion for summary judgment, at pages 11-14, the defendant Birchfield makes the argument that he cannot be held personally liable because the plaintiff was never employed by Birchfield and therefore, Birchfield cannot personally be liable in his individual capacity in violation of 42 U.S.C. §1981, and therefore, Birchfield is entitled to judgment as a matter of law. The defendant's argument is completely and totally without merit.

The defendant is correct when it argues, at page 13, that "[i]ndividual capacity lawsuits under Title VII are inappropriate. While that is true, the plaintiff has not sued Birchfield under Title VII. Plaintiff filed his lawsuit alleging that Colorworks and Birchfield, in his individual capacity, pursuant only to 42 U.S.C. §1981.

The law is quite clear as to whether an individual, in his individual capacity, can be sued pursuant to 42 U.S.C. §1981. In *Smith v. Bray,* 681 F.3d 888, 896 (7th Cir. 2012), the Court pointed out the difference between individual liability under Title VII and individual liability under 42 U.S.C. §1981. "One key difference between §1981 and Title VII is that the latter authorizes suit only against the employer as an entity rather than against individual people who are agents of the employer. Under

§1981, individuals may be liable. Compare *Williams v. Banning,* 72 F.3d 552, 555(7th Cir. 1995)(holding that supervisor may not be held liable in his individual capacity for discrimination under Title VII) with *Patterson v. Oneida County,* 375 F.3d 206,226 (2d Cir. 2004)("individuals may be held liable under 1981 for certain types of discriminatory conduct"). In *Moss v. W & A Cleaners,* 111 F. Supp. 2d 1181, 1187 (April 2000), the court held "[c]ontrary to Title VII, "individual employees can be held liable for discrimination under §1981. Citing *Liege v. Capitol Chevrolet, Inc.,* 895 F.Supp. 289,293 (M.D. Ala. 1995) "Supervisors with the capacity to hire and fire or those who can recommend such decisions are subject to liability under §1981." *Id.* (Citing *Faracca v. Clements,* 506 F.2d 956,  959 (5th Cir. 1975). §1981 does not contain a similar requirement limiting liability to "employers." See *Board of Educ. V. Illinois State Bd. of Educ.,* 979 F.Supp. 1203, 1207-08 (N.D. Ill 1997).  In *Shotz v. City of Plantation, Florida,* 344 F.3d 1161,1176 (11th Cir. 2003) the court found that "Shotz claims this includes actions under 42 U.S.C. §§1981 and 1983, which both provide for individual liability." *Page  v. Winn-Dixie Montgomery, Inc.,* 702 F.Supp.2d 1334,1355-56 (S.D.Ala. 2010) where an individual defendant attempted to obtain summary judgment against the plaintiff where the plaintiff sued the individual under §1981, the court held "[u]nlike a Title VII claim, a §1981 claim may be brought against an individual supervisor. *See e.g., Shotz v. City of Plantation Fla.,*

1161, 1176 (11th Cir. 2003)(noting that §1981 "provide[s] for individual liability"). Federal Courts have held that a claim for individual liability under §1981 requires an affirmative showing linking the individual defendant with the discriminatory action. *See Schanfield v. Sojitz Corp. of America,* 663 F.Supp. 305, 344 (S.D.N.Y. 2009)(for personal liability to attach under §1981, "[i]t must be shown that the defendant has personal involvement in the allegedly discriminatory conduct"). *Wallace v. dm Customs, Inc.,* 2006 US Dist. LEXIS 73029, 2006 WL 2882715, *7 (M.D. Fla. Oct. 6, 2006)("To establish a claim for individual liability under §1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action [and] ... [t]he claim must be predicated on the actor's personal involvement.").

In the present case, there can be no doubt that the actor, Birchfield, was directly involved in the decision to lay off/terminate the plaintiff and, as such, he can be held personally liable under §1981.

For all of the foregoing, both Colorworks' and Birchfield's motions for summary judgment are due to be denied.

Respectfully submitted,


/s/Gregory O. Wiggins
Gregory O. Wiggins
Counsel for the Plaintiff

OF COUNSEL:

WIGGINS, CHILDS, PANTAZIS,
     FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500


## CERTIFICATE OF SERVICE

I do hereby certify that I have served today, March 16, 2015, the above and foregoing, properly addressed and postage prepaid, on:

Scott A. Gilliland
Law Office of Scott A. Gilliland
400 Vestavia Parkway, Suite 241
Birmingham, Alabama 35216


/s/Gregory O. Wiggins
OF COUNSEL

32