UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| XAVIER MACK, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) Case No. 2:13-cv-02263-HGD |
| | ) |
| COLORWORKS PAINTING | ) |
| COMPANY, LLC, et al., | ) |
| | ) |
| Defendants | ) |

## **MEMORANDUM OPINION**

This matter is before the undersigned U.S. Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c).  On December 17, 2013, plaintiff, Xavier Mack, filed suit against his former employer, Colorworks, LLC (Colorworks), and the sole shareholder of the LLC, Eric Birchfield, alleging that he was terminated from his employment on December 3, 2013, based on his race, in violation of 42 U.S.C. § 1981.  (Doc. 9, Amended Complaint).

Motions for summary judgment have been filed by Birchfield (Doc. 17) and Colorworks (Doc. 22).  A response to these motions has been filed by plaintiff (Doc. 26), and a joint reply was made by defendants.  (Doc. 28).  These motions are now ready for disposition.

In his amended complaint, Mack, an African-American, alleges that he was employed by defendant Colorworks from February 2010 until his termination/layoff. According to plaintiff, at the time of his termination/layoff, defendants retained a white male employee who had been employed for only three weeks; whereas, plaintiff had been employed for approximately two years and nine months. (Doc. 9, Amended Complaint).  Plaintiff alleges that he performed his duties and responsibilities in a satisfactory manner and that the proffered reasons for his termination were a pretext for race discrimination in violation of 42 U.S.C. § 1981.  (*Id.*).

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56(a).  Defendants, as the parties seeking summary judgment, bear the initial responsibility of informing the district court of the basis for their motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrates the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  A genuine issue of material fact is shown when the non-moving party produces evidence so that a reasonable factfinder could return a verdict in his favor.  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th

Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In reviewing whether the non-moving party has met his burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter; the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992). However, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). A "mere scintilla of evidence" in support of the non-moving party also cannot overcome a motion for summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

### BACKGROUND INFORMATION

Plaintiff met Colorworks owner Eric Birchfield in around 2006 or 2007. Colorworks does commercial and residential painting. (Birchfield Depo. at 11). Mack worked for Colorworks as a painter on a part-time basis from 2006/2007 until 2011. (Mack Depo. at 10, 21). At the time Mack began working for Colorworks on a part-time basis, Colorworks had five employees: Chris Riley, Chris Hawkins, Felix Hill, Christoff Bradley and Jonathan McElwane, a/k/a "Peewee." All of these employees are Caucasian, except for Hill who is African-American.

Mack was hired on as a full-time employee on March 11, 2011. (Mack Depo. at 12, 65 and Ex. 4; Birchfield Depo. at 40). After Mack was hired to work full-time, he was predominantly supervised by Felix Hill or Christopher Hawkins. (Mack Depo. at 21). Mack had keys to the Colorworks office, the shop where the tools were stored, and Color works' vans. Only Mack, Hill and Christof had sets of keys. (*Id*. at 45-46). Mack also had a Colorworks credit card. Only Mack and Christof had a Colorworks credit card. (Mack Dep. at 46-47).

On or about December 3, 2013, plaintiff was informed that he did not need to report to work because work was slow. However, upon driving by Colorworks' place of business, plaintiff noticed that all employees had reported to work, including a white employee who had been with the company for a very short period of time. Plaintiff asserts that he questioned Birchfield about this by text messaging and was simply told "that's the way it is." When Mack stated that he did not understand this, he alleges that Birchfield responded by asking Mack if he understood that joking and laughing at the boss with other employees was detrimental to his job. Mack states he had no idea to what Birchfield was referring. (Mack Depo. at 26-28). Shortly after this exchange, Mack filed the instant lawsuit. Defendant Birchfield asserts that he had a number of good reasons for terminating Mack. A number of these events are disputed by plaintiff.

Birchfield alleges that, in early October 2013, he pulled up on a job site and caught Mack standing in the driveway talking on his telephone while the rest of the crew was painting. (Birchfield Depo. at 55). Plaintiff, however, asserts that Birchfield never caught him talking on his cell phone while the rest of the crew was working. (Plaintiff's Ex. A, Decl. of Xavier Mack (Mack Decl.)).

Birchfield further alleges that the following day, he pulled up to the same job site and found Mack sitting in the work van while the rest of the crew was painting. (Birchfield Depo. at 56). Plaintiff, however, asserts that this event never happened. (Mack Decl.).

Birchfield claims that he had previously reprimanded Mack for leaving a job site early after he had instructed the crew that Mack was working on not to leave until the job was finished. Mack responds that Birchfield did reprimand him on one occasion for leaving a job in Harpersville, Alabama. However, he points out that Birchfield has admitted that plaintiff was only a painter and never a lead man and that the two lead men who were plaintiff's supervisors made the decision to leave the job early on that day. Although not a supervisor, plaintiff was the only person reprimanded by Birchfield on this occasion. (Mack Depo. at 34-36).

It is also alleged by Birchfield that he came by a job site on one occasion and found Mack sitting in a van eating a sandwich while the rest of the crew was working, and there were other occasions when Birchfield would come to a job site and find

Mack taking a break while the rest of the crew was working. He alleges that Mack understood that Colorworks had a rule requiring everyone to take breaks and lunch at the same time.

However, a review of the testimony cited by defendants reflects that Mack advised that everyone "pretty much" took breaks at the same time but that there were occasions when he had to do his job after the others had finished their parts of the job, such that there were occasions when he might take a break 10 or 15 minutes later than the others. (Mack Depo. at 26-38). Birchfield admits that Colorworks had no written policies of any sort. (Birchfield Depo. at 35).

According to Birchfield, Mack was late in returning from lunch on Thanksgiving Eve, 2013. He alleges that he pulled Mack aside and spoke to him about returning late from lunch. Thereafter, Birchfield called in the whole crew to discuss the matter.

Plaintiff responds that, on this occasion, plaintiff's supervisors had decided to take an hour for lunch and that he was simply following the orders from his supervisors. (Mack Depo. at 28-30). Mack states that he asked Birchfield why he was not having this discussion with the entire crew, rather than just him. As a result, Birchfield called the entire crew in and they came up with an agreement regarding how long they would take for lunch. (*Id*. at 27-34). Birchfield admits that this is the

only occasion of which he is aware where Mack took an extended lunch. (Birchfield Depo. at 52).

Birchfield asserts that after this meeting, he left the job site, but returned about five minutes later because he had forgotten something. When he came in the room, Mack was in the room with two other employees mocking Birchfield and making fun of his speech that he gave them. (Birchfield Depo. at 52). Mack denies that he did this. (Mack Depo. at 28).

There were also other incidents about which Birchfield testified when he pulled up on job sites to find plaintiff not working. He also alleges that Mack was insubordinate and hung up the phone on him at least ten times and was frequently tardy for work. Plaintiff denies that any of these events occurred. (Mack Decl., ¶¶ 5-10).

Mack alleges that Colorworks terminated him on the Monday after Thanksgiving, 2013. (Mack Depo. at 23).[1] He believes his termination was based on Birchfield's claim that he saw Mack mocking him a few days earlier and other incidents when he found plaintiff not working or taking unauthorized breaks. He denies that any of these incidents occurred.

Birchfield asserts that the testimony reflects that Mack never heard him or any of his supervisors at Colorworks use a racial slur. (*See* Mack Depo. at 50). He also

---

[1] The Monday after Thanksgiving in 2013 was December 2, 2013.

notes that, while Mack was working at Colorworks, employee Jonathan McElwane was terminated for not showing up to work on time, Bobby Elliot was terminated for missing work, and Chris Riley was terminated for insubordination. Both Riley and McElwane are Caucasian. (Mack Depo. at 57). John Patrick was a part-time employee let go for lack of work. (Birchfield Depo. at 14-15).

Birchfield further testified that on the Monday after Thanksgiving 2013, he sent Mack a text saying that he needed to turn in his Colorworks keys, radio and credit card. (Birchfield Depo. at 70; *see also* Mack Depo. at 42-43). The Wednesday after Thanksgiving 2013, Birchfield states that he sent Mack a text saying that he would take "necessary authoritative measures" to retrieve these items if he did not return them. He states that Mack did not respond. (Birchfield Depo. at 72; *see also* Mack Depo. at 43).

On May 14, 2014, Birchfield called the Jefferson County Sheriff's Office to make a report which reflected that on the Friday following Thanksgiving, December 5, 2013, Birchfield complained to Sheriff's Deputy Hall that Mack was laid off due to work being slow and that he would not return Color works' keys, radio and credit card. He further stated that, after trying unsuccessfully to get these items back, he decided to fire Mack. (Doc. 21-7, Incident Report). According to the report, Birchfield told Deputy Hall on December 5, 2013, that, as long as he got his property back, he did not need the sheriff to make a report of the incident. (*Id.*). However, on

May 14, 2014, Birchfield wanted the incident documented. Deputy Leon made the report, which reflects what Birchfield claims he told Deputy Hall back on December 5, 2013. (*Id.*). Birchfield also testified that he initially laid off Mack, but decided to fire him after he would not return his Colorworks keys, credit card and radio. (Birchfield Depo. at 91-92). It is undisputed that a Sheriff's Deputy Hall went to Mack's residence on December 5, 2013, and told him it would be in his best interest to return these items to Colorworks (Mack Depo. at 43), and that Mack returned these items later the same day. (Mack Depo. at 43-44; Birchfield Depo. at 73).

After his termination, Mack filed for unemployment compensation on December 8, 2013. In its response, Colorworks claimed that Mack's employment was terminated for disrespect, tardiness, unwillingness to work and repeated insubordination. (Birchfield Depo. at 77; Doc. 21-6, Employer's Response to Request for Separation Information, Ala. Dep't of Labor).

## DISCUSSION

### I. Eric Birchfield

Defendant Eric Birchfield moves for summary judgment on the ground that Mack cannot show that (1) he was ever in a contractual/employment relationship with Birchfield, (2) he has ever been denied a contract/employment by Birchfield on the

basis of his race, or (3) Eric Birchfield terminated any contractual relationship/employment with Mack on the basis of his race. (Doc. 18, Birchfield Motion for Summary Judgment, at 2).

It is not disputed that Mack was an employee of Colorworks, not Eric Birchfield. Birchfield further cites, correctly, that the relief granted under Title VII is against an employer, not individual employees. *See Clanton v. Orleans Parish Sch. Bd.*, 649 F.2d 1084, 1099 & n.19 (5th Cir. 1981).[2] However, plaintiff is not suing Birchfield under Title VII; he is suing him pursuant to 28 U.S.C. § 1981.

> Contrary to Title VII, "individual employees can be held liable for discrimination under § 1981." *Leige v. Capitol Chevrolet, Inc.*, 895 F.Supp. 289, 293 (M.D.Ala. 1995). "Supervisors with the capacity to hire and fire or those who can recommend such decisions are subject to liability under § 1981." *Id.* (citing *Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir. 1975)). While not elaborated upon in *Leige*, the reason for rejecting an argument that § 1981 should be analyzed in the same manner as Title VII lies in the statutory distinctions between the two statutes. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (stating that the "significant differences in the statutory enforcement mechanism, coverage, and remedial provisions of Section 1981, as distinguished from Title VII, reveal that the breadth of one statute provides no support for divining the intent of Congress in limiting the coverage of the other"). Namely, as discussed in the preceding section, Title VII claims against an employer's agents are inappropriate because agents are not "employers" within the meaning of Title VII. *See* 42 U.S.C. § 2000e-2(a). However, § 1981 does not contain a similar requirement limiting liability to "employers." *See Board of Educ. v. Illinois State Bd. of Educ.*, 979 F.Supp. 1203 (N.D.Ill. 1997) (finding that "the rationale for rejecting individual liability under Title VII is

---

[2] All decisions of the former Fifth Circuit handed down prior to September 30, 1981, constitute binding precedent on this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

driven by the statute's language" restricting liability to "employers"; however, "[n]o similar statutory limitation o[n] the reach of § 1981 liability exists.").

*Moss v. W & A Cleaners*, 111 F.Supp.2d 1181, 1187 (M.D.Ala. 2000).

Based on the foregoing, the court finds that plaintiff may proceed against Birchfield in his individual capacity under § 1981.

## II.    Section 1981-Wrongful Termination

Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a). Claims of race discrimination under 42 U.S.C. § 1981 are analyzed in the same manner as claims brought under Title VII. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

In order to establish a case under Title VII or § 1981, a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence. The analytical framework and burden of production vary depending on the method of proof chosen. The evidence submitted by the parties does not reflect any direct or statistical evidence of discrimination regarding any of Mack's claims. The standard of analysis of circumstantial evidence for claims

of disparate treatment is set forth by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct.1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and by the Eleventh Circuit in *Willis v. Conopco, Inc.*, 108 F.3d 282, 284-85 (11th Cir. 1997).  Under that framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence.  *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253-54 & n.6, 101 S.Ct. at 1093-94 & n.6.  Once a *prima facie* case has been established, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the challenged employment action.  *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.  If a defendant carries its burden of producing legitimate, non-discriminatory reasons for its decision, the plaintiff is accorded the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.  The plaintiff at all times retains the ultimate burden of persuading the trier of fact that the employer discriminated against the plaintiff.  *Id.* at 253, 101 S.Ct at 1093.

*McDonnell Douglas* was a hiring case, but courts have used variants of the four factors in the context of other types of discrimination claims. *See, e.g.*, *Barber v. Int'l B'hood of Boiler Makers*, 778 F.2d 750, 756 (11th Cir. 1985) (wage discrimination); *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997) (failure to promote); *Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989) (discriminatory disciplinary action); *Damon v. Fleming Supermarkets of Florida*, 196 F.3d 1354 (11th Cir. 1999) (age discrimination).

In cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct. *Jones v. Gerwens*, 874 F.2d at 1540. The Eleventh Circuit expanded on its opinion in *Jones v. Gerwens, supra*, in *Jones v. Bessemer Carraway Med. Ctr.* in which it stated:

> Considering the facts in *Jones*, our impression is that words about "did not violate the work rule" are unnecessary to the decision in *Jones* and are *dicta*; but we will discuss them. The pertinent words in *Jones* demand not two, but three, elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff has engaged–either (a) disputedly or (b) admittedly–in misconduct similar to persons outside the protected class; and (3) that similarly situated, nonminority employees (that is, persons outside the protected class) received more favorable treatment.

> We stress that, under the *Jones* formulation, no plaintiff can make out a *prima facie* case by showing just that she belongs to a protected class and that she did not violate her employer's work rule. The plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better.

137 F.3d 1306, 1311 n.6 (11th Cir. 1998) (*superceded in part by* 151 F.3d 1321 (11th Cir. 1998). However, that is not the only way in which to make out a *prima facie* case of discrimination. A plaintiff who fails to identify a comparator still may create a "triable issue concerning the employer's discriminatory intent" by showing a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

There is no question that plaintiff is an African-American who was laid off/terminated and who was qualified for his position. Furthermore, a Caucasian employee with less experience and seniority was treated more favorably by being retained, even though business was allegedly slow. Therefore, plaintiff has established a *prima facie* case of discrimination under *McDonnell-Douglas.*

Having established a *prima facie* case of discrimination, the burden shifts to defendants to provide a legitimate, non-discriminatory reason for their actions. In this regard, defendants assert that on numerous occasions, plaintiff was found not working

at job sites while others were working, taking unauthorized breaks, leaving work early, acting insubordinate and mocking or making fun of Birchfield.

However, plaintiff presents evidence that these reasons are pretextual. A plaintiff may show pretext and survive summary judgment by "presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons." *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 965 (11th Cir. 1997) (citations omitted); *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) ("The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of a *prima facie* case, suffice to show intentional discrimination.").

The evidence presented by plaintiff to show pretext includes the fact that Birchfield initially told Mack that he was not being called into work because things were "slow." Later, when Mack attempted to obtain unemployment compensation, Birchfield asserted that Mack was terminated for insubordination and not doing his job. Still later, he claimed that he terminated Mack because he failed to return a radio, keys and a company credit card.

Birchfield claims that he first laid Mack off, but later decided to terminate him when he had to send the sheriff out to retrieve the radio, keys and credit card.

However, his initial claim was that he laid Mack off because work was slow. In fact, there is no evidence that this is true. In addition, at the time he contacted the sheriff, Birchfield did not request that a report be made of his complaint. It is only several months later, after this litigation ensued, that he re-contacted the sheriff's department and made a report to a different deputy about what he allegedly told the deputy who responded to his earlier call. He claims that he told the first deputy that he had laid Mack off because work was slow, but that he decided to terminate Mack when he would not return his property. However, because this entire report was not made until several months after Birchfield's initial interaction with the sheriff's department and after litigation had begun, the creation of this report is suspicious in and of itself.

Birchfield also referenced a number of occasions when he allegedly caught plaintiff slacking off on the job, leaving the job site early, acting insubordinately or making fun of him. Keeping in mind that, for purposes of summary judgment, the facts are viewed most favorably toward the non-moving party, *i.e.* the plaintiff, it is noted that plaintiff denies each and every one of defendants' claims regarding his alleged insubordination and that plaintiff failed to do his assigned work. Plaintiff also explained that, on the occasions when he was reprimanded for taking a long lunch or leaving a job site early, those were incidents where the decision to do so was made by the lead man on the job. Mack was never the lead man. Therefore, he avers

he was simply following the orders of his supervisor. Mack also denies that he was late for work or had any of the claimed job deficiencies cited by Birchfield. No other testimony from other employees was presented to corroborate defendants' claims.

In addition, Mack points out that although Birchfield claims that Mack was a poor employee, he has no documentation to back any of this up. Likewise, he has no written policies that document Birchfield's claim that employees were expected to take their breaks at the same time, nor does he contradict plaintiff's claim that, because his job was the last one completed, others often took their breaks before he was able to do so.

Despite the fact that plaintiff was allegedly tardy on numerous occasions, disrespectful toward Birchfield and insubordinate on a number of occasions, Birchfield admits that there is no documentation to back up these claims. Furthermore, Birchfield admits that, during Mack's employment with Colorworks, he received at least two pay raises during the time that he was supposedly such a poor employee.

Consequently, plaintiff has made a sufficient showing of pretext to survive summary judgment. Therefore, it s ORDERED that defendants' motions for summary judgment are due to be and hereby are DENIED because of the existence of genuine issues of material fact regarding whether defendants' reasons for plaintiff's

termination were a pretext for discrimination. By separate order, a pretrial conference will be set in this matter.

      DONE this 21st day of October, 2015.

                                                  HARWELL G. DAVIS, III
                                    UNITED STATES MAGISTRATE JUDGE